[No. D048297. Fourth Dist., Div. One. July 2, 2007.]

TERRI HALEY et al., Plaintiffs and Appellants, v.
CASA DEL REY HOMEOWNERS ASSOCIATION et al., Defendants and
Respondents.

864

**COUNSEL**

Patricia A. Gregory for Plaintiffs and Appellants.

Shifflet, Kane & Konoske, Gregory P. Konoske and D. Amy Akiyama for Defendants and Respondents Casa del Rey Homeowners Association, Patrica Lego and Doris Giannini.

Gates, O'Doherty, Gonter & Guy, Douglas D. Guy and Nikki H. Love for Defendant and Respondent Pam Bargamian.

OPINION

**McCONNELL, P. J.**—This case arises from a dispute concerning use of the common area at the Casa Del Rey condominium building. Terri Haley and William Haley (together Haley when appropriate) appeal a judgment entered after (1) the trial court granted nonsuit on causes of action against the Casa Del Rey Homeowners Association (the Association) for nuisance and negligence, and on a cause of action against Pam Bargamian for defamation, and ruled in the Association's favor on a cause of action against it for declaratory and injunctive relief, and (2) the jury found against Haley on a cause of action against the Association for breach of contract, and on a cause of action against the Association, Patricia Lego and Pam Giannini for breach of fiduciary duty.

Haley contends the court abused its discretion by granting nonsuit on the causes of action for nuisance and defamation, refusing to grant declaratory and injunctive relief, and refusing to modify jury instructions pertaining to the availability of nominal damages for breach of contract. Haley also challenges the timeliness of the defendants' memorandum of costs. We affirm the judgment.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

The Casa Del Rey condominium building has 18 units evenly divided between the first and second floors. The lower units have small concrete patios for owners' exclusive use. A few feet of flat ground extends westerly beyond the patios to an ivy-covered downward slope. Originally, the flat ground was also covered with ivy, but many years ago most lower unit owners removed the ivy and replaced it with tile pavers or concrete to extend their patio areas. Some owners also placed items in that portion of the common area such as railroad ties, trellises, plantings and flower pots.

In 1998 Terri Haley and William Haley purchased a downstairs unit at Casa Del Rey, and at the time pavers and a hedge were in the common area beyond the patio. Terri Haley moved into the unit in early 2000.

In 2003 Haley and another resident of Casa Del Rey with whom she was close friends, Shawn Frampton, complained to the Association about the

---

[1] In their appellate briefing the Haleys mention their breach of fiduciary duty claim only in passing. They do not mention breach of fiduciary duty in their list of issues and develop no argument or cite any legal authority pertaining to it, and thus have waived review of the jury's finding against them on that claim. (*Interinsurance Exchange v. Collins* (1994) 30 Cal.App.4th 1445, 1448 [37 Cal.Rptr.2d 126].) As the second amended complaint named Lego and Giannini only in the breach of fiduciary duty cause of action, they are parties to this appeal only insofar as the memorandum of costs issue is concerned.

encroachments in the common area, even though their units both had patio extensions. Their complaints reportedly arose after a resident yelled at Frampton for walking on a railroad tie near her patio, and Haley slipped on the slope as she attempted to avoid encroachments.

In a July 2003 letter, the Association's management company, Cal West Management & Sales (Cal West), notified owners of the complaint. The following month the Association held meetings regarding the issue. The Association also established committees and asked owners to give input as to what should be done with the small strip of common area at issue. At one meeting, a majority of owners agreed that personal items should be removed from the common area and the Association should consult an attorney about amending the covenants, conditions, and restrictions (CC&R's) to give it authority to grant owners an exclusive use easement over that area. Under the CC&R's, the right to use of the common area could be changed by a vote of at least 60 percent of the owners.

In October 2003 the Association circulated a draft amendment to the CC&R's that would give it discretion to allow patio extensions. It stated, "The Board shall have the right to allow one or more owners to use portions of the common area, provided that such portions of the common area are nominal in area and adjacent to the owner's separate interest, do not encroach upon another owner's restricted common area; and provided further that such use does not unreasonably interfere with any other homeowner's use or enjoyment of the development." The amendment is intended to preserve the privacy of owners of the lower units.

The Association sent owners a ballot on the matter. Bargamian, who was then on the board of directors, certified under penalty of perjury that 16 of the 18 owners voted in favor of the amendment. Bargamian, however, did not actually see the ballots. Signe Osteen, who managed the Association through Cal West, had personally counted the ballots and determined more than 60 percent of the owners voted for the amendment. Subsequently, the ballots were misplaced. Bargamian said she got the information in her certification from Osteen. According to Osteen, she did not tell Bargamian that *16* owners approved the measure, but rather that more than 60 percent of them approved the measure.

Most of the owners removed their pavers and other encroachments from the common area, including Haley, but some did not. The common area beyond the back patios now largely consists of dirt instead of patio extensions. Under the amendment to the CC&R's, the Association has approved some encroachments.

In January 2004 the Haleys sued the Association, Lego, Giannini and Bargamian. A second amended complaint included causes of action against the Association for declaratory and injunctive relief, breach of the CC&R's, nuisance and negligence; a cause of action against the Association, and Lego and Giannini, who were formerly on the Association's board of directors, but not when the amendment to the CC&R's was adopted, for breach of fiduciary duty; and a cause of action against Bargamian for slander.[2]

The cause of action for declaratory and injunctive relief alleged: "Throughout 2003, [Haley] protested the policy allowing private capture of common area. As a result, [she] incurred substantial attorney's fees to contest the policy which has resulted in [the Association] only recently asking, but not forcing, condo owners to remove some of the encroachments, while at the same time, seeking to revise the CC&Rs so as to allow ongoing and future encroachments." The breach of contract cause of action alleged the defendants' failure to enforce the CC&R's caused Haley damages including her "valuable time and attorneys' fees incurred to respond to and protest the Board actions," diminution in property value, and "additional condominium dues or fees for wasteful and/or improper activities."

The breach of fiduciary duty cause of action alleged the defendants failed to make reasonable and good faith efforts to enforce the CC&R's. Further, it alleged that from 2003 Giannini, Lego and the Association had "undertaken regular and pernicious harassment of [Haley] because [she was] outspoken . . . regarding the encroachments on common areas." The complaint alleged a variety of wrongdoing, including disregarding Haley's complaints about owners' violations of the CC&R's, and the mounting of a hate campaign against Haley that included such things as telling owners not to talk to her, forbidding her from distributing information pertaining to the Association, directing owners to return Haley's letters unopened, leaving eggs on her doorstep, telling her she could not walk in the common area, calling her names such as " 'chicken liver shit,' " telling her she should move because she is hated, and telling owners and the police she is schizophrenic when she is not. The complaint also challenged the validity of the vote in which the amendment to the CC&R's was made.

The nuisance cause of action alleged that by allowing encroachments in the common area, the Association "created and maintained a nuisance which substantially and unreasonably interferes with [Haley's] use and enjoyment of property and comfortable enjoyment of life at Casa Del Rey." It also alleged that "[b]y failing to inspect, maintain, and repair the common pipes, plumbing, and waterworks of Casa [D]el Rey . . . [the Association has] created and

---

[2] The second amended complaint also named Frampton as a plaintiff and Cal West as a defendant, but they are not involved in this appeal.

maintained a nuisance." The negligence cause of action was also based on plumbing problems. It alleged that on August 4, 2003, her condominium was flooded by sewage from her toilet, and she endured five subsequent sewage floods. The Association allegedly "cleaned and restored other affected condos but failed to take appropriate actions to decontaminate and restore [Haley's condominium], thereby creating a Level 3 sewage contamination and destroying much of [the condominium]."

The slander cause of action against Bargamian alleged she falsely published to a third party (Frampton) that Haley "was having sex with [her son] William and Frampton . . . , and later published that [she] was having group sex with William and Frampton." (Some capitalization omitted.)

A jury trial was held in January 2006. After the close of Haley's evidence, Bargamian successfully moved for a nonsuit on the slander cause of action on the ground she presented no evidence on the publication element of the tort. The court also granted the Association's motion for nonsuit on the negligence cause of action because of a lack of causation, and on the nuisance cause of action as it was essentially also based on allegations of negligence.

After the presentation of all evidence and closing arguments, the jury returned a special verdict form in which they found the Haleys substantially performed under the CC&R's, and the Association failed to do something unspecified that the CC&R's required, but its conduct was not a substantial factor in causing Haley any harm. The jury found the Association, Lego and Giannini did not breach their fiduciary duty to the Haleys.

The court ruled against the Haleys on their cause of action for declaratory and injunctive relief, finding the defendants enforced the CC&R's in a fair and consistent manner, the amendment to the CC&R's was lawfully passed and there was no breach of fiduciary duty. The court also designated the Association the prevailing party for purposes of attorney fees. It awarded Bargamian costs of $5,039, and the Association attorney fees of $169,956.26 and costs of $14,800.26. The Haleys unsuccessfully moved for a new trial, and judgment was entered for the defendants on April 10, 2006.

## DISCUSSION

### I

### *Breach of Contract Damages*

Haley contends the court erred by allowing "a special verdict that specifically included the word *substantial,* thus precluding nominal damages [on her

breach of contract cause of action]. At trial, there were objections made to the jury instructions. Erroneous jury instructions allowing the word substantial to remain caused confusion upon [*sic*] the jury. In fact, [the Association] made several requests to modify the jury instructions but only one addition was allowed."

■ Nominal damages may be awarded in a breach of contract action (Civ. Code, § 3360; Judicial Council of Cal. Civ. Jury Instns. (2007) CACI No. 360), but the Haleys do not cite the appellate record to show they requested an instruction on nominal damages or made any objection to the instructions or the special verdict form. "The reviewing court is not required to make an independent, unassisted study of the record in search of error or grounds to support the judgment. It is entitled to the assistance of counsel." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 594, p. 627.) Accordingly, where a party provides a brief "without argument, citation of authority or record references establishing that the points were made below," we may "treat the points as waived, or meritless, and pass them without further consideration." (*Troensegaard v. Silvercrest Industries, Inc.* (1985) 175 Cal.App.3d 218, 228 [220 Cal.Rptr. 712].)

Even without waiver, however, Haley's contention lacks merit. The court instructed the jury as follows: "To succeed on a claim for breach of the governing documents the plaintiffs must prove all of the following elements: [¶] Number one, that the plaintiffs did all or substantially all of the significant things that the contract required them to do. [¶] Second, the plaintiffs were excused from doing all of the significant things that the contract required them to do. [¶] Third, the defendants failed to do something that the contract required them to do. [¶] Fourth, that the failure of the defendants was a substantial factor in causing damage to the plaintiffs. [¶] Number five, the nature and extent of such damages."

■ These instructions were proper (see CACI No. 303), and contrary to Haley's position, neither the instructions nor the special verdict form required a finding of *substantial* damages. Rather, they required a finding the Association's breach of contract was a substantial factor in *causing* damage. As the trial court noted in denying Haley's motion for a new trial, "this business about substantial was an issue for causation. It wasn't for damages." "The test for causation in a breach of contract . . . action is whether the breach was a substantial factor in causing the damages. [Citation.] 'Causation of damages in contract cases, as in tort cases, requires that the damages be proximately caused by the defendant's breach, and that their causal occurrence be at least reasonably certain.' [Citation.] A proximate cause of loss or damage is something that is a substantial factor in bringing about that loss or damage. [Citations.] The term 'substantial factor' has no precise definition, but 'it

seems to be something which is more than a slight, trivial, negligible, or theoretical factor in producing a particular result.' " (*US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 909 [28 Cal.Rptr.3d 894].)

Moreover, Haley presented no evidence of any damages caused by a breach of the CC&R's, and in closing argument her attorney did not mention damages, *even nominal damages*. In the Association's closing argument, its attorney pointed out there "is not one single piece of evidence . . . as to any damage [Haley] sustained." The court's instructions and the special verdict form did not result in a finding of no damages, Haley's failure of proof did. Haley cites *Maher v. Saad* (2000) 82 Cal.App.4th 1317 [99 Cal.Rptr.2d 213], but it concerns jury instructions in a medical malpractice action and is inapplicable.

## II

### *Declaratory and Injunctive Relief*

■ Haley also contends the court improperly denied her request for declaratory and injunctive relief. " 'A permanent injunction is a determination on the merits that a plaintiff has prevailed on a cause of action . . . against a defendant and that equitable relief is appropriate.' [Citation.] The grant or denial of a permanent injunction rests within the trial court's sound discretion and will not be disturbed on appeal absent a showing of a clear abuse of discretion. [Citation.] The exercise of discretion must be supported by the evidence and, 'to the extent the trial court had to review the evidence to resolve disputed factual issues, and draw inferences from the presented facts, [we] review such factual findings under a substantial evidence standard.' [Citation.] We resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge all reasonable inferences to support the trial court's order." (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 390 [33 Cal.Rptr.3d 644].) The issue of whether declaratory relief is necessary or proper is also subject to review under the abuse of discretion standard. (*DeLaura v. Beckett* (2006) 137 Cal.App.4th 542, 545, fn. 3 [40 Cal.Rptr.3d 253].)

Haley's principal challenge is to the court's finding the amendment to the CC&R's giving the Association discretion to allow encroachments beyond the back patios of the lower units was lawfully passed. Haley cites Bargamian's testimony that she did not see the owners' votes, and in certifying the election result she relied on information she received from the Association's manager, Osteen, that more than 60 percent of the owners voted for the amendment.

Haley, however, ignores the evidence supporting the court's ruling. Osteen testified she personally counted the votes, more than 60 percent of the owners

approved the amendment to the CC&R's, and she reported that outcome to the Association at a board of directors meeting. Haley cites no evidence suggesting that fewer than 60 percent of the owners approved the amendment, or any authority for the proposition that the misplacement of the ballots or Bargamian's certification of the result without personally counting the votes invalidates the vote. As to the latter issue, Osteen testified the votes identified the unit owners and the owners had a right of privacy as to how they voted.[3] Further, Karen Conlon, the president of the California Association of Community Managers and an expert in the field of property management, testified that "[t]ypically, the community management company will tally a vote," and there was no voting irregularity. The court's finding is supported by substantial evidence.

Haley also contends she is entitled to declaratory and injunctive relief because "removal of the encroachments [in the common area beyond the back patios] should have been enforced." The evidence showed, however, that because of Haley's complaint the Association asked owners of the lower units to remove their encroachments and most of them complied. Conlon testified she had reviewed the Association's records and "[t]here were numerous letters sent to all of the members requesting that they remove any personal items from common areas," particularly the area of the patio extensions. Further, deposition transcripts showed that all but two owners complied. Injunctive relief is available to prevent future harm, not to address past harm. "An injunction is authorized only when it appears that *wrongful* acts are likely to recur." (*Russell v. Douvan* (2003) 112 Cal.App.4th 399, 402 [5 Cal.Rptr.3d 137], italics added.)

To any extent the Association was unable to obtain 100 percent compliance, Haley does not cite any authority for the proposition that it was required to pursue an expensive and time-consuming lawsuit. To the contrary, the CC&R's give the Association the right, but not the obligation, to file lawsuits against owners for violating their provisions. Conlon explained that while the Association is charged with enforcing the CC&R's, board members "also have the ability to use some discretion to do what they feel is in the best interests of the community." She elaborated that "the business judgment rule comes [into] play, [and] boards have to take into consideration the interests of not only certain owners, but all owners and what is in the best interests of the community. They do what they think is best under the circumstances, whatever the circumstances are." As an example, Conlon

---

[3] Haley asserts the "vote count of the amendment could not be ascertained as accurate." She cites the hearsay testimony of William Haley that the official vote count was not accurate "based upon my mother telling me how she voted and finding out from Mr. Frampton how he voted, and subsequently finding out from my mother how Mr. Slater voted." To pass, the amendment required the approval of 60 percent of the owners, or at least 11 owners, and there is no dispute in the evidence that at least 11 owners voted in favor of it.

explained that if an owner was violating the governing documents but the homeowners association lacked the finances to pursue a lawsuit, the board "will continue to try to work with the owner to get them to comply with the governing documents."

In any event, with the amendment to the CC&R's the Association now has the discretion to allow encroachments under certain conditions to protect owners' privacy. Haley agreed in her testimony that if the amendment was legally adopted she would abide by it. She stated, "I would have been willing to live with anything legal." At another point she was asked whether she agreed "to be bound by what 60 percent of the voting members want to do, as far as how they govern themselves?" and she responded, "Yes." Thus, she has conceded that the court's finding on the vote issue resolves the encroachment matter and declaratory and injunctive relief is unwarranted.

Haley asserts there was "uncontroverted evidence" the Association discriminated by not enforcing the CC&R's against "individual board members [who] admitted to violating the regulations." The single cite she gives to the record is to the testimony of Giannini that "[o]ff and on" the Association notified her that her garage was in violation of the CC&R's because it was so full of garage sale finds it had no room for a car. The Association did not ignore the matter, however, and it was not required to sue Giannini rather than handle the matter informally whenever the issue arose. This issue does not show the Association handled CC&R violations in a discriminatory manner.

■ The trial court found the Association fairly and consistently enforced the CC&R's in accordance with the guidance set forth in *Lamden v. La Jolla Shores Clubdominium Homeowners Assn.* (1999) 21 Cal.4th 249 [87 Cal.Rptr.2d 237, 980 P.2d 940] (*Lamden*). In *Lamden*, a condominium owner sued the community association for diminution in the value of her property after it decided to spot-treat termite infestation rather than fumigate. The court held as follows: "Where a duly constituted community association board, upon reasonable investigation, in good faith and with regard for the best interests of the community association and its members, exercises discretion within the scope of its authority under relevant statutes, covenants and restrictions to select among means for discharging an obligation to maintain and repair a development's common areas, courts should defer to the board's authority and presumed expertise. Thus, we adopt today for California courts a rule of judicial deference to community association board decisionmaking that applies, regardless of an association's corporate status, when owners in common interest developments seek to litigate ordinary maintenance decisions entrusted to the discretion of their associations' boards of directors." (*Id.* at p. 253.)

*Lamden* is not directly on point as this case does not concern ordinary maintenance decisions. However, we believe it also reasonably stands for the proposition that the Association had discretion to select among means for remedying violations of the CC&R's without resorting to expensive and time-consuming litigation, and the courts should defer to that discretion. Before *Lamden,* the Supreme Court explained that "[g]enerally, courts will uphold decisions made by the governing board of an owners association so long as they represent good faith efforts to further the purposes of the common interest development, are consistent with the development's governing documents, and comply with public policy." (*Nahrstedt v. Lakeside Village Condominium Assn., Inc.* (1994) 8 Cal.4th 361, 374 [33 Cal.Rptr.2d 63, 878 P.2d 1275].)

■ Further, because "a stable and predictable living environment is crucial to the success of condominiums and other common interest residential developments, and because recorded use restrictions are a primary means of ensuring this stability and predictability, the Legislature in [Civil Code] section 1354 has afforded such restrictions a presumption of validity and has required of challengers that they demonstrate the restriction's 'unreasonableness' by the deferential standard applicable to equitable servitudes." (*Nahrstedt v. Lakeside Village Condominium Assn., supra,* 8 Cal.4th at p. 368.) Haley did not show the amendment to the CC&R's is unreasonable.

To the contrary, the evidence shows that the portion of the common area where the patio extensions existed was never used as a walkway, and instead was covered by ivy until it was removed by owners who added pavers or other improvements. Further, because of the proximity of that portion of the common area to the patios and living spaces of the lower condominium units, unrestricted use of it would invade the privacy of lower unit owners. It would be untenable, for instance, for owners to place lawn chairs directly outside a lower unit's patio and only a few feet from a living room or bedroom, or to use that portion of the common area as a thoroughfare.

Additionally, to any extent residents would be required to use the common area for egress in an emergency, Conlon and Osteen testified the pavers or other surfaces made passage safer. Conlon believed pavers were preferable to the dirt surface in place after removal of the improvements.

Mary Howell, the Association's attorney, testified she had represented homeowner associations for approximately 25 years. The Association retained her in the summer of 2003 regarding Haley's complaint about its "long-standing practice of letting homeowners expand what would be their exclusive use common areas into other areas of the common area." Howell drafted the amendment to the CC&R's, and she believed based on her research and

knowledge that the Association had discretion to grant exclusive use of the common area in question if at least 60 percent of the owners approved the amendment, as required by the CC&R's.[4]

■ Under all the circumstances, the amendment is a reasonable and commonsense solution to Haley's complaints that the letter of the original CC&R's was being violated. The court properly exercised its discretion by denying declaratory and injunctive relief.

## III

*Nonsuit on Nuisance Cause of Action*[5]

Haley next contends the court abused its discretion by granting nonsuit on her nuisance cause of action against the Association "because the acts of the other homeowners and the [Association] interfered with [her] use and enjoyment of [her] property interest."[6]

■ " 'A motion for nonsuit or demurrer to the evidence concedes the truth of the facts proved, but denies as a matter of law that they sustain the plaintiff's case. A trial court may grant a nonsuit only when, disregarding conflicting evidence, viewing the record in the light most favorable to the plaintiff and indulging in every legitimate inference[,] which may be drawn from the evidence, it determines there is *no* substantial evidence to support a judgment in the plaintiff's favor. [Citations.]' " (*Mechanical Contractors Assn. v. Greater Bay Area Assn.* (1998) 66 Cal.App.4th 672, 677 [78 Cal.Rptr.2d 225].) We review the ruling on a motion for nonsuit independently, employing the same standard that governs the trial court. (*Saunders v. Taylor* (1996) 42 Cal.App.4th 1538, 1541–1542 [50 Cal.Rptr.2d 395].)

■ "Nuisance is the interference 'with the comfortable enjoyment of life or property.' . . . [T]o recover damages for nuisance the plaintiff must prove the defendant's 'invasion of the plaintiff's interest in the use and enjoyment of the land was *substantial,* i.e., that it caused the plaintiff to suffer "substantial actual damage." ' The interference ' "must also be *unreasonable." ' The test for determining whether the plaintiff has suffered an unreasonable interference with the use and enjoyment of his [or her] property 'is whether

---

[4] Civil Code section 1363.07, subdivision (a), enacted in 2005 after events here, allows a homeowners association to grant exclusive use of a portion of a common area to an individual member on the affirmative vote of at least 67 percent of the members, or a different percentage specified in the governing documents.

[5] Haley does not challenge the nonsuit on the negligence cause of action.

[6] Haley erroneously asserts the nuisance cause of action was also against Lego, Giannini and Bargamian. It was only against the Association.

the gravity of the harm outweighs the social utility of the defendant's conduct.' " (*Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles* (2004) 117 Cal.App.4th 1138, 1154 [12 Cal.Rptr.3d 493], fns. omitted.)

The nuisance cause of action in the second amended complaint alleged Haley had "been damaged as a result of the nuisance in an amount to be proved at trial." As discussed, however, Haley adduced no evidence the Association's conduct caused her any damage.

The nuisance cause of action also sought "injunctive relief to abate the nuisance." As we explained above, however, the Association did require owners to remove encroachments when Haley complained, and now, through the amendment to the CC&R's it has discretion to allow encroachments to protect the privacy of owners of the lower units. Haley failed to establish there was any unreasonable interference with her use and enjoyment of the property. Certainly, the privacy interests of the lower unit owners, including Haley, outweigh any arguable minor inconvenience to her caused by the inability to access the entire periphery of the condominium building. Presumably, the amendment to the CC&R's will increase, rather than harm, Haley's use and enjoyment of her unit. There is simply no nuisance to abate.

## IV

### Nonsuit on Defamation Cause of Action

Additionally, Haley contends the court abused its discretion by granting nonsuit on her defamation cause of action against Bargamian on the ground the publication element of the tort was unsatisfied.

"Defamation constitutes an injury to reputation; the injury may occur by means of libel or slander. [Citation.] . . . A false and unprivileged *oral* communication attributing to a person specific misdeeds or certain unfavorable characteristics or qualities, or uttering certain other derogatory statements regarding a person, constitutes slander." (*Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1242 [7 Cal.Rptr.3d 576, 80 P.3d 676].)

"One of the elements of the tort of defamation is 'publication.' In general, each time the defamatory statement is communicated to a third person who understands its defamatory meaning as applied to the plaintiff, the statement is said to have been 'published,' although a written dissemination, as suggested by the common meaning of that term, is not required. Each publication ordinarily gives rise to a new cause of action for defamation." (*Shively v. Bozanich, supra,* 31 Cal.4th at p. 1242.) "Publication of defamatory matter is

its communication intentionally or by a negligent act to one other than the person defamed." (*Hellar v. Bianco* (1952) 111 Cal.App.2d 424, 426 [244 P.2d 757].)

Haley testified that one day she and Frampton were sitting at the computer in her home when Bargamian began pounding on Haley's screen door and commanding Haley to " 'get over here.' " Haley told Bargamian to go away, but she refused. Bargamian accused Haley of wasting the time of Bargamian's landscapers by talking to them earlier. Haley testified that after a few minutes she went to the door, and Bargamian called her a "chicken shit for not coming out." Haley then went outside and Bargamian called her "ugly." Haley retorted, "you have a fat butt." According to Haley, Bargamian then said, " 'What's this funny stuff going on between you and your son? I know something very funny is going on between you and your son. . . . I know you are having sex with your son,' " and " 'you are also having sex with [Frampton]' " in a three-way arrangement.

Haley, however, produced no evidence Bargamian knew Frampton was at Haley's home. Frampton testified he visited Haley at her home occasionally, but on the day in question he had no personal effects at the front door of her home that would notify Bargamian of his presence. Frampton said he never went to the door when Bargamian was there, explaining "I didn't feel like I had an interest in it." Frampton also testified he was in a bedroom of Haley's home working on a computer and there was a wall between him and Bargamian and they could not see each other. Further, Frampton testified Haley never told Bargamian he was in her home.

Haley vaguely asserts "[i]t should have been the jury who decided whether . . . Bargamian did in fact see . . . Frampton *in the mirror*." (Italics added.) Haley points to no evidence, however, suggesting Frampton could have seen Bargamian in a mirror. To the contrary, Frampton testified he and Bargamian could not see each other. Haley testified that when Bargamian pounded on her door, "I was able to see who it was from the mirror." That testimony, however, did not concern Frampton.

Contrary to Haley's position, it is not sufficient, standing alone, that Frampton overheard Bargamian's accusation that Haley and her son had a sexual relationship. "If a reasonable person would recognize that an act creates an unreasonable risk that the defamatory matter will be communicated to a third person, the conduct becomes a negligent communication." (Rest.2d

Torts, § 577, com. k.) Here, the evidence does not indicate Bargamian had any reason to believe Frampton would overhear her comments. Haley asserts that "[a]ny argument by . . . Bargamian as to whether or not *she* knew Frampton was present had yet to be made. . . . Bargamian's credibility should have been assessed by the jury and not simply dismissed." Haley, however, had the opportunity to but never questioned Bargamian on the issue. The nonsuit was proper.[7]

## V

### *Memorandum of Costs*

The jury returned its special verdict on January 25, 2006. On February 23, the Association, Lego and Giannini filed a memorandum of costs.[8] At a hearing on March 22, the court granted Haley's motion to tax costs and took the amount of attorney fees and costs to be awarded under submission. On April 10, judgment on the special verdict was entered and it included an award of attorney fees and costs to the defendants.

Haley concedes the defendants were prevailing parties entitled to fees and costs and she does not challenge the amount of the award. She contends that under California Rules of Court, rule 3.1700(a)(1) the memorandum of costs was untimely.[9] Rule 3.1700(a)(1) provides in part: "A prevailing party who claims costs must serve and file a memorandum of costs within 15 days after the date of mailing of the notice of entry of judgment or dismissal by the clerk under Code of Civil Procedure section 664.5 or the date of service of written notice of entry of judgment or dismissal, or within 180 days after entry of judgment, whichever is first."

Haley also cites Code of Civil Procedure section 664, which provides: "When trial by jury has been had, judgment must be entered by the clerk, in conformity to the verdict within 24 hours after the rendition of the verdict, whether or not a motion for judgment notwithstanding the verdict be pending, unless the court order the case to be reserved for argument or further consideration, or grant a stay of proceedings. If the trial has been had by the court, judgment must be entered by the clerk, in conformity to the decision of

---

[7] Given our holding on the defamation issue, we are not required to address Bargamian's contention that Frampton was not a third person for purposes of publication since she accused him of having a sexual relationship with Haley and her son.

[8] Bargamian presumably filed a separate memorandum of costs, and Haley does not challenge it on appeal.

[9] All rule references are to the California Rules of Court. Current rule 3.1700 was numbered rule 870 at the relevant time, but the rule remains substantively unchanged. (See Historical Notes, 23 pt. 1B West's Ann. Court Rules (2006 ed.) foll. rule 3.1700, p. 140.)

the court, immediately upon the filing of such decision. In no case is a judgment effectual for any purpose until entered."

Haley asserts that "[e]ither the [m]emorandum of costs was filed too late following the entry of the judgment by the clerk on January 25, 2006, or was filed in *advance* of the entry of the judgment prepared by [the defendants] and filed on April 10, 2006. Either way, the memorandum of costs was not filed in compliance with [rule 3.1700]." In her motion to strike, Haley argued the cost memorandum was too late because it was not filed within 15 days of entry of the jury's special verdict.

■ The interpretation of statutes presents questions of law subject to independent review on appeal. (*Board of Retirement v. Lewis* (1990) 217 Cal.App.3d 956, 964 [266 Cal.Rptr. 225].) "Our primary aim in construing any law is to determine the legislative intent. [Citation.] In doing so we look first to the words of the statute, giving them their usual and ordinary meaning." (*Committee of Seven Thousand v. Superior Court* (1988) 45 Cal.3d 491, 501 [247 Cal.Rptr. 362, 754 P.2d 708].) ■ Under rule 3.1700(a)(1), the operative event is entry of *judgment,* not entry of a special verdict. Here, defendants filed their memorandum of costs well before entry of judgment, which for some unexplained reason was entered more than two months after the jury returned its verdict. Thus, the memorandum was not late.

Further, time limitations pertaining to a memorandum of costs are not jurisdictional (*Gunlock Corp. v. Walk on Water, Inc.* (1993) 15 Cal.App.4th 1301, 1304 [19 Cal.Rptr.2d 197]), and the premature filing of a memorandum of costs is treated as "a mere irregularity at best" that does not constitute reversible error absent a showing of prejudice. (*Pamela W. Millsom* (1994) 25 Cal.App.4th 950, 961 [30 Cal.Rptr.2d 690]; see *Parker v. City of Los Angeles* (1974) 44 Cal.App.3d 556, 565–566 [118 Cal.Rptr. 687].) Rather, courts treat prematurely filed cost bills as being timely filed. (*Laurel Hills Homeowners Assn. v. City Council* (1978) 83 Cal.App.3d 515, 528 [147 Cal.Rptr. 842]; *Brown v. West Covina Toyota* (1994) 26 Cal.App.4th 555, 560 [32 Cal.Rptr.2d 85], disapproved of on another ground in *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 996 [73 Cal.Rptr.2d 682, 953 P.2d 858].)

Haley has made no showing of prejudice, and thus no reversible error exists.

## DISPOSITION

The judgment is affirmed. The respondents are entitled to costs on appeal.

Benke, J., and Huffman, J., concurred.

Appellants' petition for review by the Supreme Court was denied October 24, 2007, S155098.