Filed 9/30/21  Lopez v. Mahle CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JUAN LOPEZ et al., | |
| Plaintiffs and Appellants, | G058985 |
| v. | (Super. Ct. No. 30-2018-01007423) |
| CURT WILLIAM MAHLE, | O P I N I ON |
| Defendant and Appellant. | |

Appeal from a judgment and postjudgment orders of the Superior Court of Orange County, Derek W. Hunt, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Law Offices of Jacob Emrani and Arturo T. Salinas for Plaintiff and Appellant.

Law Offices of Cleidin Z. Atanous, Clein Z. Atanous; Macdonald & Cody and Danica Y. Chang for Defendant and Appellant.

\*　　　\*　　　\*

Plaintiffs Juan Lopez, Elva Torres, and Janelle Torres appeal from a judgment after a jury trial on their complaint for personal injuries arising from a traffic collision with defendant William Mahle.[1]  Defendant admitted liability, and served offers to compromise under Code of Civil Procedure section 998 (998 offers) in the amount of $35,000 for Juan, $30,000 for Elva, and $15,000 for Janelle.[2]  Plaintiffs did not accept the 998 offers, and the jury ultimately awarded damages in the amount of $1,500 for Juan, $500 for Elva, and $500 for Janelle.  Defendant filed a memorandum of costs seeking his postoffer costs and expert witness fees, which the court denied in its entirety.  Plaintiffs subsequently filed a motion for a new trial based on inadequate damages, irregularity in the proceedings, and "error in law."  The court denied the motion for a new trial, but the record on appeal does not include the court's reasoning.

On appeal, plaintiffs contend the court erred by denying their motion for a new trial because the damages awarded were inadequate.  Defendant cross-appeals and contends the court erred by denying his costs even though he was a prevailing party under section 998.  For the reasons below, the court did not err by denying plaintiffs' motion for a new trial because the evidence regarding plaintiffs' injuries and reasonable medical expenses was highly contested.  But the court erred by denying defendant's costs given that plaintiffs did not recover a more favorable judgment than defendant's 998 offers.  We accordingly reverse and remand for the court to enter an amended postjudgment order awarding defendant's postoffer costs and expert witness fees.

---

[1]    Because two of the plaintiffs to this appeal share the same last name, we refer to the plaintiffs by first name to avoid confusion.  No disrespect is intended.

[2]    All further statutory references are to the Code of Civil Procedure unless otherwise stated.

FACTS

*The Trial*

In 2018, plaintiffs filed a personal injury action against defendant. Plaintiffs were in a car that was struck from behind by defendant's car in July 2016. Defendant admitted liability, and the matter proceeded to trial on the issue of damages. Prior to the trial, defendant served offers to compromise under section 998 in the amount of $35,000 for Juan, $30,000 for Elva, and $15,000 for Janelle. Plaintiffs rejected the offers by allowing them to expire.

A.  Plaintiffs' Expert Witness Testimony

Plaintiffs' expert, Dr. Arthur Kreitenberg, was a board-certified orthopedic surgeon, but he was not a treating physician in the case. He testified he conducted a "medical-legal" evaluation of Juan and Elva and physically examined them in November 2019 due to their complaints of "neck and back issues." According to Dr. Kreitenberg, there was no evidence in their medical records indicating any preexisting issues that would have contributed to their injuries.

Based on his evaluation and review of their medical records, Dr. Kreitenberg opined Juan developed neck and back pain as a result of the accident. He further testified it was reasonable for Juan to be seen in the emergency room and receive a "trial of chiropractic treatment." He also claimed it was reasonable for Juan to have MRIs about five weeks after the accident, three epidural injections in his neck, three epidural injections in his back, and visits with a pain management physician. He concluded, Juan "continues to have significant neck and back pain from this accident" and "would benefit from ongoing pain management" but there were "no indications for surgery . . . ." With respect to Elva, Dr. Kreitenberg acknowledged his opinion was "very similar" and repeated the same testimony summarized above.

Regarding plaintiffs' medical expenses, he testified the chiropractic billings for Juan and Elva "were a little bit high . . . ." They were between $4,000 to $5,000, which he claimed were "really not exorbitant," but he suggested $4,000 would have been reasonable. As to Janelle, he testified $2,600 in chiropractic treatment was unreasonable because he did not think chiropractic care was "appropriate" for a nine-year old. But he stated it was reasonable for Janelle to have three MRIs, which ultimately showed "there was nothing bad going on . . . ." Juan and Elva each had six epidural injections (three in the cervical spine and three in the lumbar spine), and Dr. Kreitenberg testified $10,000 to $12,000 per injection ($72,000 total) was reasonable.

As to Juan's three MRIs, Dr. Kreitenberg testified they were done about five weeks after the accident. He explained the cervical MRI was not "terrible looking" but showed "some disc bulging of 2 to 3 millimeters" "at three levels in the neck, cervical spine." The thoracic MRI of the upper back "was normal." The lumbar MRI of the lower back "showed some disc bulging" including an "impingement of the left L-4 nerve root." He noted the impingement could "cause no physical findings whatsoever" but agreed Juan's complaints of pain comported to the impingement. As to Elva's MRIs, he testified the cervical MRI showed "2 to 3 millimeter disc bulging" that was "very similar" to Juan's MRI.

According to Dr. Kreitenberg, both Juan and Elva reported significant pain at the time he evaluated them. Juan had told Dr. Kreitenberg he was experiencing neck pain "ranging from a 6 to 9 out of 10" and back pain ranging from "8 to 10 out of 10." On cross-examination, Dr. Kreitenberg conceded Juan's complaints were "subjective," and he had "no way to confirm or refute that." Elva told Dr. Kreitenberg she "had neck pain 7 to 10 out of 10" and "lumbar spine pain of 7 to 9 out of 10."

Dr. Kreitenberg also generally testified that "eighty or 90 percent of people get better after a soft tissue injury at three months with conservative care; and often without conservative care . . . ." A minority of people require more invasive care such as

4

epidural injections. He claimed Juan and Elva "had significant improvement" after receiving the epidural injections "based on what their reporting pain was."

On cross-examination, defendant's counsel asked a series of questions suggesting Elva had not told Dr. Kreitenberg she had a cervical MRI and received physical therapy for neck pain prior to the subject accident. Likewise, Dr. Kreitenberg's testimony suggested Juan had not disclosed a "prior shoulder problem" or prior complaints of back, rib, and foot issues. He further testified Juan told him he had lost consciousness in the accident, but he did not know at the time that the medical records indicated Juan had not lost consciousness. When asked if this information in the medical records "jumped out to [him]," he testified, "No. Again, my focus is, as an orthopedic surgeon, the musculoskeletal. If there was an issue about a head injury, that would be handled by a different doctor." He also conceded he did not review any medical records predating the accident or actual images of any MRIs or X-rays that were done. Finally, he admitted Juan's neurological findings were normal although he experienced limited range of motion.

B. Defendant's Expert Witness Testimony

Defendant's expert witness, Dr. Douglas Kiester, was a board-certified orthopedic surgeon specializing in the spine with additional expertise in biomechanics and accident reconstruction. He generally testified the accident involved a rear impact with a secondary frontal impact and that no airbags deployed.

Dr. Kiester also testified he examined Juan and Elva and reviewed their medical records. During the examination, Juan told Dr. Kiester he had some neck pain but was "unable to describe his discomfort." He also said his shoulders were "inflamed" but "was unable to describe what he felt there." Dr. Kiester testified his physical examination of Juan was "pretty unremarkable" with "normal" "physical findings" and that Juan "had pain over broad areas that didn't correlate with anything anatomically."

5

Although Juan claimed he could not perform certain physical movements, Dr. Kiester testified he was able to do other similar motions. Dr. Kiester also suggested Juan did not make "a good-faith effort" during a hand strength test or tried to manipulate the results.

With respect to Juan's medical records, he testified Juan's "complaints of his neck and of his chest" were "exactly what you would expect" "with this type of accident." But Juan's complaints to the chiropractor of headaches, pain in the chest, shoulder, upper, middle, and lower back, and tingling in the arms and legs were unsupported. He testified the medical records further showed Juan had gone to the hospital on many occasions after the accident for conditions unrelated to the accident. The records also suggested Juan had some back problems prior to the accident. As to Juan's MRIs, Dr. Kiester saw "normal degenerative changes" due to "normal signs of aging." Although the radiologist reports indicated some "bulging," Dr. Kiester testified it was not due to the accident and was "all chronic degenerative changes."

Based on his evaluation and review of the medical records, Dr. Kiester opined there was a "secondary frontal impact," so it was "a reasonable reason for [Juan] to have some chest discomfort" and "some neck discomfort." But he testified "things were just totally nonsense" once Juan visited the chiropractor. Regarding the epidural injections, he explained they were unreasonable and "there was absolutely no valid medical reason for" them.

Dr. Kiester provided similar testimony regarding Elva. During his physical examination, Elva generally complained of pain but did not provide any specificity. She had a "normal upper body examination, including her shoulders and her neck." Likewise, her lumbar spine exam was "very normal," and he could not identify any "anatomic structure" correlating to her complaints.

Dr. Kiester also reviewed Elva's MRIs, including cervical spine MRIs from both before and after the accident. He generally did not see any injury or trauma from the

6

accident. He further testified he "saw absolutely no difference" when he compared the images from before and after the accident.

Based on his evaluation and review of the medical records, he opined it was reasonable for Elva to take an ambulance to the hospital after the accident. But "when she went and saw a chiropractor [the following day], everything exploded and blew up and nothing made sense." The epidural injections also were unnecessary because there were "no clinical indications" for doing them.

On cross-examination, Dr. Kiester provided certain testimony that is central to this appeal. Plaintiffs' counsel asked a series of questions regarding Elva's cervical MRIs from before and after the accident. Focusing on the radiologist reports, plaintiffs' counsel noted the pre-accident MRI was normal while the post-accident MRI included disc bulges. Dr. Kiester explained the actual images from before and after the accident were practically identical. But he suggested different radiologists could have interpreted the images differently and further stated the pre-accident MRI was reported to be "normal" simply because "they were looking for a tumor," which the MRI did not show.

During this discussion, plaintiffs' counsel asked, "But if there were no disc bulges before the accident in the January MRI, and then all of a sudden in the August MRI, which is a month after the accident, it's hard to attribute that to the acquisition of those disc bulges from old age, correct?" Dr. Kiester responded, "The studies are identical." After plaintiffs' counsel said, "Okay," Dr. Kiester added, "When you look at the films, the studies are identical. *One was done for the purpose of monitoring a tumor; one was done for the purpose of you coming into court and trying to get money from the jury*." (Italics added.)

Plaintiffs' counsel then moved to strike the testimony, and the court ruled, "Yes. That will be stricken." The court continued, "Dr. Kiester, you know, we're in a court of law. It's just a matter of paying attention and keeping our cool and answering the question in the proceeding."

*Jury Verdict and Judgment*

In December 2019, the jury awarded damages in the amount of $1,500 for Juan, $500 for Elva, and $500 for Janelle. The court entered judgment in accordance with the verdict in January 2020.

*Defendant's Costs and Plaintiffs' Motion to Strike or Tax Costs*

Before the court entered judgment, on December 19, 2019, defendant served and filed a memorandum of costs claiming $43,958.70 in postoffer costs, which included expert fees totaling $26,765 for three experts, on the basis that plaintiffs rejected the 998 offers. On January 6, 2020, plaintiffs filed a motion to strike or tax costs, contending the memorandum of costs was "statutorily improper" because it was prematurely served before entry of judgment. They did not raise any other arguments and have never contested the validity of the offers. The court subsequently entered judgment on January 13, 2020, and defendant filed an opposition to plaintiffs' motion to strike or tax costs on January 15, 2020. Plaintiffs filed their reply on January 21, 2020.

The court denied defendant's request for costs. First, the court stated: "Plaintiffs . . . did receive 'a net monetary recovery' per . . . §1032 (a)(4). Nevertheless, [the] verdict and the ensuring judgment could have been rendered in a limited civil case and, had plaintiffs sought costs, the court in its discretion would have denied . . . any costs in their entirety. . . . § 1033." Second, the court addressed the 998 offers but appears to have mixed up the parties. The court stated: "[B]ased on *defendant's* previous rejection of *plaintiff's* $30,000 . . . § 998 settlement offer, defendant itself has submitted its own memorandum of costs, seeking $43,958 as though it were the prevailing party. But plaintiff having fallen into the first category of . . . § 1032 (a)(4), it appears that the court has no discretion to declare defendant the prevailing party." (Italics added.) Regardless, the court relied on *Bach v. County of Butte* (1989) 215 Cal.App.3d 294 to

8

conclude "it would have stricken all of defendant's itemized costs which were not supported by backup . . . ."

Defendant filed a motion for reconsideration arguing the court mistakenly believed plaintiffs had made a 998 offer that defendant rejected when, in fact, defendant had made 998 offers that plaintiffs rejected. He also contended the minute order mistakenly stated a hearing was held when the matter was taken under submission. Finally, he claimed the court erred by finding backup documentation was required because the cost memorandum was verified by counsel. Regardless, he pointed to the attorney declaration filed with his memorandum of costs, which had attached various invoices and receipts.

*Plaintiffs' Motion for New Trial*

A few weeks later, plaintiffs filed a motion for a new trial claiming inadequate damages, irregularity in the proceedings, and "error in law." They argued the awarded damages were inadequate because the evidence demonstrated Juan and Elva each incurred "medical special damages . . . in excess of $72,000," Elva's injuries included "a 2 mm disk bulge in her cervical spine," and Janelle incurred "medical special damages . . . in excess of $9,000." Plaintiffs further argued "an irregularity in the proceedings" occurred during Dr. Kiester's cross-examination when he had an "emotional outburst . . . ." They pointed to his testimony that one of Elva's MRIs "was done for the purpose of [plaintiffs] coming into court and trying to get money from the jury." Although the court granted plaintiffs' motion to strike this testimony, plaintiffs claimed the comment was "so inflammatory and prejudicial as to prevent . . . a fair trial." We need not summarize the other arguments in plaintiffs' motion because this appeal focuses on the adequacy of the damages.

The court denied plaintiffs' motion for a new trial, but the minute order did not detail the court's reasoning. After plaintiffs appealed, the court further vacated the

9

hearing on defendant's motion for reconsideration of the order denying defendant's request for costs.  Defendant then cross-appealed from the court's orders on plaintiffs' motion to strike or tax costs and defendant's motion for reconsideration.

DISCUSSION

Plaintiffs contend a new trial should have been granted because the damages awarded were inadequate.  In his cross-appeal, defendant argues the court erred by refusing to award any of his costs.  Because we cannot conclude the evidence required the jury to award a greater amount in damages, we conclude the court did not err by denying plaintiffs' motion for a new trial.  But the court did err by denying defendant's costs because plaintiffs did not recover a more favorable judgment than defendant's 998 offers.  We accordingly reverse and remand for the court to enter an amended postjudgment order awarding defendant's postoffer costs and expert witness fees.

*The Court Did Not Err by Denying Plaintiffs' Motion for a New Trial*

A.  Applicable Law and Standard of Review

Section 657 provides that a jury's verdict "may be modified or vacated, in whole or in part, and a new or further trial granted on all or part of the issues, on the application of the party aggrieved" based on any of the grounds enumerated in the statute that "materially affect[ ] the substantial rights of such party."  The grounds for a new trial include "[e]xcessive or inadequate damages."  (*Id.*, subd. 5.)  But "[a] new trial shall not be granted upon the ground of . . . excessive or inadequate damages, unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or jury clearly should have reached a different verdict or decision."  (§ 657.)

10

"[W]e review an order denying a new trial motion under the abuse of discretion standard. However, in doing so, we must review the entire record to determine independently whether there were grounds for granting the motion." (*Santillan v. Roman Catholic Bishop of Fresno* (2012) 202 Cal.App.4th 708, 733.) We can reverse the denial of a motion for a new trial based on inadequate damages "'only if there is no substantial conflict in the evidence and the evidence compels the conclusion that the motion should have been granted.'" (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1416.)

### B. Conflicting Evidence

At the outset, we note the jury awarded a total of $2,500 in damages. While plaintiffs contend this was inadequate, they do not identify the amount of damages they actually sought or what amount would have been reasonable. Plaintiffs' opening and reply briefs only reference $72,000 for the six epidural injections and $8,000 in chiropractic care for Juan and Elva. The record on appeal also is not clear what damages plaintiffs sought, but a minute order states: "In closing argument, plaintiffs sought $100K for each of the two adult plaintiffs and $15K for the minor plaintiff."

Regardless of the exact damages sought, defendant presented abundant evidence from which the jury could conclude plaintiffs did not suffer significant injuries from the accident. Among other things, Dr. Kiester testified his physical examinations of Juan and Elva were normal, their MRIs showed degenerative changes and no remarkable findings related to the accident, Juan had some back problems prior to the accident, and Elva's MRIs showed no change from before and after the accident. He concluded most of their medical expenses were unreasonable and unjustified, including the epidural injections. As to Janelle, plaintiffs' own expert witness testified her medical expenses for chiropractic treatment was unreasonable because chiropractic care was not appropriate for a nine-year old. There otherwise was very little testimony regarding Janelle's injuries

11

or medical expenses. Dr. Kiester also suggested the accident was minor by testifying no airbags deployed.[3]

Although plaintiffs' expert witness provided other conflicting testimony, the jury was free to give whatever weight it chose to the evidence. It was entitled to disbelieve Dr. Kreitenberg and instead accept Dr. Kiester's opinion that plaintiffs' medical expenses were unnecessary. Dr. Kreitenberg was not a treating physician, and plaintiffs failed to designate any treating physicians, which was critical for their case. Although plaintiffs repeatedly state it was undisputed defendant was at "fault" for the accident, the jury was still obligated to determine the extent of plaintiffs' injuries, what medical treatment was necessary, and plaintiffs' credibility on those issues. Because the evidence was disputed as to the extent of plaintiffs' injuries and whether they resulted from the accident, we cannot conclude the evidence required the jury to award a greater amount in damages. Indeed, there is substantial evidence in the record supporting the verdict.

C. Dr. Kiester's Testimony on Cross-examination

Plaintiffs also contend Dr. Kiester's testimony regarding Elva's pre-accident and post-accident MRIs "[i]nflamed the [p]assions of the [j]ury [a]gainst" them. They point to the following testimony provided on cross-examination: "When you look at the films, the studies are identical. *One was done for the purpose of monitoring a tumor; one was done for the purpose of you coming into court and trying to get money from the jury.*" (Italics added.) Although the court granted plaintiffs' motion to strike this testimony, plaintiffs contend "the comment was presented, and the jury was left to attempt to disregard it without any further guidance from the court."

---

[3] Defendant notes other witness testimony established the accident was a minor collision, but the record on appeal does not include any other expert or witness testimony.

Evidence Code section 353 provides: "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: [¶] (a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion; and [¶] (b) The court which passes upon the effect of the error or errors is of the opinion that the admitted evidence should have been excluded on the ground stated and that the error or errors complained of resulted in a miscarriage of justice." Likewise, our Constitution provides: "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const. Art. VI, § 13.)

Here, plaintiffs moved to strike Dr. Kiester's testimony without identifying the specific grounds for the objection. In any event, the court granted the motion to strike, and plaintiffs did not request any further admonitions or request a motion for mistrial. Given this inadequate record, plaintiffs failed to preserve the issue for appellate review. In their reply brief, plaintiffs appear to concede "nothing can be done" at this point and "[t]he only purpose for this issue . . . is merely to exhibit the atmosphere these [p]laintiffs were facing at trial." Finally, we note defendant suggests the court provided jury instructions requesting the jury ignore any stricken testimony. If true, this would further undermine plaintiffs' assertion that the court did not provide any guidance to the jury, but the record on appeal does not include the jury instructions. For the foregoing reasons, we find no reversible error.[4]

---

[4] Because plaintiffs' claims fail on the merits, we need not address defendant's forfeiture arguments.

13

*Cross-appeal: The Court Erred by Denying Defendant's Costs*

In his cross-appeal, defendant contends the court erred by denying his request for costs in the amount of $43,958.70, which included expert fees totaling $26,765 for three experts. Among other things, defendant argues he was the prevailing party pursuant to section 998 because plaintiffs did not recover a judgment that was more favorable than his 998 offers. We agree and remand for the court to award defendant's postoffer costs and expert witness fees.

A. Applicable Law and Standard of Review

Section 998, subdivision (c)(1) provides: "If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer. In addition, in any action or proceeding other than an eminent domain action, the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover postoffer costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant."

The purpose of section 998 "is to encourage settlement by providing a strong financial disincentive to a party—whether it be a plaintiff or a defendant—who fails to achieve a better result than that party could have achieved by accepting his or her opponent's settlement offer. (This is the stick. The carrot is that by awarding costs to the putative settler the statute provides a financial incentive to make reasonable settlement offers.)" (*Bank of San Pedro v. Superior Court* (1992) 3 Cal.4th 797, 804.)

"Generally, a trial court's determination of costs is reviewed for abuse of discretion. [Citation.] However, where 'the determination of whether costs should be

14

awarded is an issue of law on undisputed facts, we exercise de novo review.'"
(*MacQuiddy v. Mercedes-Benz USA, LLC* (2015) 233 Cal.App.4th 1036, 1050.)


### B. Defendant's Right to Recover Postoffer Costs

Here, the court should have awarded defendant's costs pursuant to section 998. First, the court appears to have mixed up the parties by identifying defendant as the party who rejected a 998 offer when the opposite was true—*plaintiffs* rejected *defendant's* 998 offers. Second, the court mistakenly concluded it had "no discretion to declare defendant the prevailing party" because plaintiffs were prevailing parties under section 1032, subdivision (a)(4). While section 1032 allows a prevailing party to recover costs, "[s]ection 998 modifies the general rule of section 1032 that only the prevailing party recovers its costs." (*Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1112.) "It begins by stating: 'The costs allowed under Sections 1031 and 1032 shall be withheld or augmented as provided in this section.'" (*Ibid.*) It "further provides that where, as here, the plaintiff recovers a judgment less than defendant's pretrial offer, the defendant may recover its costs notwithstanding that the plaintiff is the prevailing party: 'the plaintiff . . . shall pay the defendant's costs from the time of the offer.' [Citation.] Thus, under section 998 a defendant whose pretrial offer is greater than the judgment received by the plaintiff is treated for purposes of postoffer costs as if it were the prevailing party." (*Ibid.*) The court accordingly erred by relying on section 1032 rather than section 998, which entitled defendant to his costs.

Plaintiffs do not dispute defendant served valid 998 offers for a total of $80,000, which they did not accept, or that they failed to obtain a more favorable judgment. Plaintiffs also do not challenge the reasonableness of the offers. Instead, plaintiffs only argue defendant's memorandum of costs was prematurely filed before entry of judgment. (See Cal. Rules of Court, rule 3.1700(a)(1).) But "time limitations pertaining to a memorandum of costs are not jurisdictional [citation], and the premature

15

filing of a memorandum of costs is treated as 'a mere irregularity at best' that does not constitute reversible error absent a showing of prejudice." (*Haley v. Casa Del Rey Homeowners Assn.* (2007) 153 Cal.App.4th 863, 880.) Plaintiffs contend they are prejudiced because "they are . . . faced with the prospect of having a judgment entered against them as the result of an improperly filed document." This conclusory argument does not show how plaintiffs were prejudiced by the early filing when they had a full opportunity to challenge the costs on any grounds.

Finally, we note the court suggested "it would have stricken all of defendant's itemized costs which were not supported by backup" assuming it considered the issue. But there is no requirement that documents be attached to the memorandum of costs, and the initial verification of the memorandum of costs by a party or attorney is sufficient. (Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2020) ¶ 17:504.) "Only if the costs have been put in issue via a motion to tax costs must supporting documentation be submitted." (*Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, 1267.) *Bach v. County of Butte*, *supra*, 215 Cal.App.3d 294, which the court cited in its minute order, addressed the lack of documentation for appellate costs and similarly held documentation is only necessary when costs are challenged by a motion to tax costs. (*Id.* at pp. 307-308.) Here, plaintiffs' motion did not put at issue the amounts or reasonableness of any costs, which appear to have been limited to defendant's postoffer costs and expert witness fees. Instead, the motion only raised a technical argument regarding the timing of the costs bill. Defendant accordingly did not need to submit any documentation, which defendant submitted anyway when he filed his memorandum of costs. We accordingly reverse and remand for the trial court to enter an amended postjudgment order awarding defendant's postoffer costs and expert witness fees.

16

## DISPOSITION

The judgment is affirmed. The orders denying defendant's costs are reversed and remanded. On remand, the court is instructed to enter an amended postjudgment order awarding defendant's postoffer costs and expert witness fees. Defendant shall recover his costs on appeal.

MARKS, J.*

WE CONCUR:

O'LEARY, P. J.

BEDSWORTH, J.

*Judge of the Orange Super. Ct., assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.