Filed 4/17/25  Doe v. Santa Cruz-Monterey-Merced Managed Medical Care Com. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JANE DOE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SANTA CRUZ-MONTEREY-MERCED MANAGED MEDICAL CARE COMMISSION et al.,<br><br>    Defendants and Respondents. | H051821<br>(Santa Cruz County<br> Super. Ct. No. 20CV02149) |

Plaintiff Jane Doe filed a putative class action complaint alleging a single cause of action against defendants (1) Santa Cruz-Monterey-Merced Managed Medical Care Commission, (2) Linda Forbes, (3) Brenda Hill, and (4) Heather Perko for violation of the Confidentiality of Medical Information Act (CMIA; Civ. Code, § 56 et seq.). Defendant Santa Cruz-Monterey-Merced Managed Medical Care Commission does business as Central California Alliance for Health (Alliance).

Defendants moved for summary judgment, which the trial court granted by written order.  Before a judgment was filed in defendants' favor, defendants filed a memorandum of costs seeking $22,265.32 as the prevailing parties in the action.  (See Code. Civ. Proc., § 1032, subd. (b).)[1]  Approximately a week later, the judgment was filed in favor of

---

[1] Unspecified statutory references are to the Code of Civil Procedure unless otherwise indicated.

defendants.[2]  Plaintiff subsequently filed a motion to strike or tax costs.  The trial court taxed costs and awarded defendants a total of $19,065.32.

On appeal, plaintiff contends that defendants were not entitled to any costs because their memorandum of costs was filed prematurely before the judgment was filed.  Second, plaintiff argues that the CMIA only authorizes a plaintiff, not a defendant, to recover costs as the prevailing party.  Third, to the extent any costs are awarded to defendants, plaintiff contends the amount should be reduced to $4,805.40.

For reasons that we will explain, we determine that defendants were entitled to recover costs.  We also conclude, however, that defendants should not have been awarded costs for certain deposition related travel expenses and for fees for electronic service of documents through an electronic filing service provider.  In addition, defendants withdrew a portion of their request for costs in the trial court.  We will modify the cost award to reflect these reductions, and we will affirm the order awarding costs as so modified.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  *Complaint and Judgment*

In the operative third amended putative class action complaint, plaintiff alleged a single cause of action against defendants for violating the CMIA.  Plaintiff alleged that defendants' negligence resulted in an unauthorized party accessing and viewing her medical information.

---

[2] Plaintiff filed a separate appeal from the judgment.  This court affirmed the judgment.  (*Doe v. Santa Cruz-Monterey-Merced Managed Medical Care Commission* (Nov. 20, 2024, H051515) [nonpub. opn.].)  Plaintiff filed a petition for review, which was granted by the California Supreme Court.  (*Doe v. Santa Cruz-Monterey-Merced Managed Medical Care Commission* (Feb. 11, 2025, S288552).)  The California Supreme Court has deferred further action in the matter pending consideration and disposition of a related issue in *J.M. v. Illuminate Education, Inc.* (2024) 103 Cal.App.5th 1125, review granted Oct. 30, 2024, S286699.

2

Defendants filed a motion for summary judgment, which the trial court granted on August 7, 2023. The parties thereafter discussed but could not agree on the wording of the proposed judgment to be submitted to the court. Defendants ultimately submitted a proposed judgment to the court on August 23, 2023.

On September 1, 2023, the trial court filed a judgment in favor of defendants. On October 17, 2023, defendants served plaintiff with a notice of entry of judgment.

**B.** *Defendants' Memorandum of Costs*

In the meantime, on August 23, 2023, defendants filed a memorandum of costs seeking $22,265.32. The total amount consisted of: (1) filing and motion fees of $3,611.03; (2) deposition costs of $13,114.94; (3) fees for electronic filing or service of $2,183.90; and (4) other costs (including mediator's fees) of $3,355.45.

**C.** *Plaintiff's Motion to Strike or Tax Costs*

On September 8, 2023, plaintiff filed a motion to strike or tax costs. She contended that defendants were not entitled to any costs because (1) their memorandum of costs was "filed prematurely" and therefore "not timely," and (2) the CMIA only authorized a plaintiff to recover costs. Alternatively, to the extent defendants were entitled to recover costs, plaintiff argued that defendants were only entitled to $4,805.40, as the remaining amounts were either not allowable under section 1033.5, subdivision (a); not reasonably necessary; not reasonable in amount; were previously requested and denied by the trial court; and/or were previously ordered by the trial court to be paid by defendants to plaintiff. Plaintiff filed a declaration from counsel in support of her motion.

**D.** *Defendants' Opposition to the Motion to Strike or Tax Costs*

Defendants filed opposition to plaintiff's motion to strike or tax costs. Defendants reduced their request for costs to $22,220.12. They contended that all the remaining costs were allowable, necessary, and reasonable in amount. Defendants also provided supporting declarations from counsel.

3

**E.** *Plaintiff's Reply in Support of the Motion to Strike or Tax Costs*

Plaintiff filed a reply in support of her motion to strike or tax costs. Among other arguments, she contended that defendants' memorandum of costs was prematurely filed before judgment was entered. Although a judgment had since been entered, she argued that the time to file a memorandum of costs had now expired.

**F.** *The Trial Court's Order*

After a hearing, the trial court granted in part plaintiff's motion to strike or tax costs. The court taxed costs in the amount of $3,200 for mediator's fees. The court awarded defendants a total of $19,065.32, which represented all other costs originally sought by defendants in their memorandum of costs. The court explained that "[i]n general, [d]efendant's costs appear to have been actually incurred and reasonable considering the motion practice in this case, the filing and service fees necessary for those motions, and the deposition fees and travel necessary to take and appear at those depositions."

Plaintiff filed a notice of appeal from the order awarding costs.

## II. DISCUSSION

On appeal, plaintiff contends that defendants were not entitled to any costs because their memorandum of costs was "filed prematurely" and therefore the memorandum was "not timely." Second, she argues that the CMIA only authorizes a plaintiff, not a defendant, to recover costs as the prevailing party. Third, to the extent costs are awarded to defendants, plaintiff contends the amount should be reduced to $4,805.40.

**A.** *Timeliness of Defendants' Memorandum of Costs*

Plaintiff contends that defendants' memorandum of costs was prematurely filed and that as a result, the trial court should not have awarded any costs. Defendants contend that although they filed their memorandum of costs early, the court did not err in awarding costs.

4

California Rules of Court, rule 3.1700(a)(1)[3] provides in relevant part that a "prevailing party who claims costs must serve and file a memorandum of costs within 15 days *after* . . . the date of service of written notice of entry of judgment or dismissal, or within 180 days after entry of judgment, whichever is first." (Italics added.) In this case, defendants filed a memorandum of costs in August 2023, before the judgment was filed in September 2023, and before plaintiff was served in October 2023 with a notice of entry of judgment. Defendants' memorandum of costs was thus filed prematurely. The trial court ultimately held a hearing and filed an order in November 2023, granting in part plaintiff's motion to strike or tax costs.

"A prematurely filed memorandum of costs is ' "a mere irregularity at best" that does not constitute reversible error absent a showing of prejudice' and is treated 'as being timely filed.' [Citation.]" (*Lowry v. Port San Luis Harbor Dist.* (2020) 56 Cal.App.5th 211, 221–222 (*Lowry*); accord, *Haley v. Casa Del Rey Homeowners Assn.* (2007) 153 Cal.App.4th 863, 880 (*Haley*); *Pamela W. v. Millsom* (1994) 25 Cal.App.4th 950, 961 (*Pamela W.*).) For example, in *Lowry*, the plaintiff objected to the defendant's memorandum of costs as premature because judgment had not been entered. (*Lowry*, *supra*, at p. 221.) "After judgment was entered, the trial court held a hearing regarding costs and issued its order taxing and granting costs." (*Id.* at p. 222.) On appeal, the plaintiff "ha[d] not shown he was prejudiced by the early filing of the memorandum." (*Ibid.*) The appellate court treated the memorandum of costs as timely filed and ultimately found no error in the award of costs. (See *ibid.*; accord, *Haley*, *supra*, at p. 880.)

We determine that the trial court did not err in treating defendants' memorandum of costs as timely filed. Although defendants filed a memorandum of costs before the judgment was filed, "the trial court held a hearing regarding costs and issued its order

---

[3] Unspecified rule references are to the California Rules of Court unless otherwise indicated.

taxing and granting costs" after the judgment was filed. (*Lowry*, *supra*, 56 Cal.App.5th at p. 222.) Plaintiff has not "shown [she] was prejudiced by the early filing of the memorandum." (*Ibid.*) Plaintiff argues that she was prejudiced because the trial court ultimately awarded costs to defendants. This argument, however, does not demonstrate that she "was prejudiced by the *early* filing of the memorandum." (*Ibid.*, italics added; see also *Haley*, *supra*, 153 Cal.App.4th at p. 880; *Pamela W.*, *supra*, 25 Cal.App.4th at p. 961.) Further, the cases cited by plaintiff do not support her contention that the award of costs was improper in this case where defendants' memorandum of costs was prematurely filed before the judgment was ultimately filed. (See *Boonyarit v. Payless Shoesource, Inc.* (2006) 145 Cal.App.4th 1188, 1192 [trial court erred in awarding costs because no judgment of dismissal was *ever* filed]; *Sanabria v. Embrey* (2001) 92 Cal.App.4th 422, 425–426 [trial court erred in awarding costs because *late-filed* memorandum of costs was not filed within 15 days after service of notice of entry of dismissal]; *Russell v. Trans Pacific Group* (1993) 19 Cal.App.4th 1717, 1719, 1725–1726 [trial court did not err in denying attorney's fees contained in cost memorandum, where statute and rule of court required a *separate, formal motion* for attorney's fees filed before or at the same time as the cost memorandum].) Likewise, plaintiff's reliance on the general proposition that the Rules of Court have the force of statutes does not persuade us that a different result is required in this case.[4]

In sum, we determine that the trial court did not err by treating defendants' memorandum of costs as timely filed.

### B. *Whether a Defendant May Recover Costs for Prevailing on a CMIA Claim*

Plaintiff contends that defendants were not entitled to any costs because the CMIA only allows a prevailing plaintiff, not a prevailing defendant, to recover costs.

---

[4] We note that plaintiff cites an opinion from this court that was not published. Except in circumstances that do not apply here, a nonpublished opinion "must not be cited or relied on" by a party. (Rule 8.1115(a).)

Defendants contend that they are entitled to costs as the prevailing parties under section 1032, subdivision (b) (hereafter section 1032(b)) and that the CMIA does not preclude their right to costs.

" 'The right to recover costs exists solely by virtue of statute.' [Citations.]" (*Murillo v. Fleetwood Enterprises, Inc*. (1998) 17 Cal.4th 985, 989 (*Murillo*).) Defendants in this case relied on section 1032(b), the general statute authorizing costs to the prevailing party. Section 1032(b) states, "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding."[5] A prevailing party under section 1032 includes a defendant when the plaintiff did not obtain any relief. (*Id*., subd. (a)(4).) Defendants, who prevailed on summary judgment in this case, would "plainly" (*Murillo*, *supra*, at p. 989) be entitled to recover their costs as the prevailing parties in the absence of another statute "expressly provid[ing]" otherwise (§ 1032, subd. (b)). At issue in this case is whether the CMIA "expressly provide[s]" otherwise. (§ 1032(b).)

The CMIA generally requires a health care provider to maintain medical information in a manner that preserves its confidentiality. (Civ. Code, § 56.101, subd. (a).) The CMIA " 'is intended to protect the confidentiality of individually identifiable medical information obtained from a patient by a health care provider [and related entities], while at the same time setting forth limited circumstances in which the release of such information to specified entities or individuals is permissible.' [Citations.]" (*Brown v. Mortensen* (2011) 51 Cal.4th 1052, 1070.)

Regarding remedies, Civil Code section 56.35 of the CMIA states, "In addition to any other remedies available at law, *a patient* whose medical information has been used

---

[5] In contrast to section 1032(b), which generally authorizes costs to the prevailing party, the general rule regarding attorney's fees is "that 'each party to a lawsuit ordinarily pays its own attorney fees' unless a statute or contract provides otherwise." (*Segal v. ASICS America Corp*. (2022) 12 Cal.5th 651, 666 (*Segal*).)

7

or disclosed in violation of [specified provisions of the CMIA] and who has sustained economic loss or personal injury therefrom may recover compensatory damages, punitive damages not to exceed three thousand dollars ($3,000), attorney's fees not to exceed one thousand dollars ($1,000), and *the costs of litigation*." (Italics added.)

In this case, plaintiff contends that the CMIA only allows a prevailing plaintiff to recover costs and that the costs awarded to defendants violates this provision of the CMIA. Relying on *Murillo*, *supra*, 17 Cal.4th 985, defendants contend that their entitlement to costs under section 1032(b) is not limited by Civil Code section 56.35 of the CMIA.

We determine that defendants are entitled to recover their costs as prevailing parties under section 1032(b) and that Civil Code section 56.35 does not "expressly provide[]" otherwise (§ 1032(b)). In reaching this conclusion, we are guided by the California Supreme Court's opinion in *Murillo*, *supra*, 17 Cal.4th 985.

In *Murillo*, the plaintiff filed a lawsuit under the Song-Beverly Consumer Warranty Act (the Song-Beverly Act; Civ. Code, § 1790 et seq.), but the defendants prevailed. (*Murillo*, *supra*, 17 Cal.4th at p. 988.) The Song-Beverly Act, also "known as the automobile 'lemon law,' " "contains a cost-shifting provision that expressly allows prevailing *plaintiffs* to recover their costs, including attorney fees, incurred commencing and prosecuting a lawsuit" but "makes no mention of prevailing *defendants*." (*Murillo*, *supra*, at pp. 990, 988; see Civ. Code § 1794, subd. (d) (hereafter Civil Code section 1794(d)).)

The California Supreme Court concluded that the defendants were entitled to recover their costs under section 1032(b) notwithstanding the "asymmetry" in remedies provided to parties under the Song-Beverly Act. (*Murillo*, *supra*, 17 Cal.4th at p. 990; see *id.* at pp. 988, 999.) The California Supreme Court reasoned, "Because section 1032(b) grants a prevailing party the right to recover costs '[e]xcept as otherwise expressly provided by statute* (italics added), we must first determine whether Civil Code

8

section 1794(d) [of the Song-Beverly Act] provides an 'express' exception. Although Civil Code section 1794(d) [of the Song-Beverly Act] gives a prevailing buyer the right to recover 'costs and expenses, including attorney's fees,' the statute makes no mention of prevailing sellers. In other words, it does not *expressly* disallow recovery of costs by prevailing sellers; any suggestion that prevailing sellers are prohibited from recovering their costs is at most *implied*. Accordingly, based on the plain meaning of the words of the statutes in question, we conclude Civil Code section 1794(d) [of the Song-Beverly Act] does not provide an 'express' exception to the general rule permitting a seller, as a prevailing party, to recover its costs under section 1032(b)." (*Id.* at p. 991.) The California Supreme Court distinguished cost statutes that "concern the ability of both parties to recover costs . . . [citations], or require that additional conditions be satisfied before one side of the litigation may recover costs [citations]," because "these statutes may constitute express exceptions to section 1032(b)." (*Id.* at p. 999.)

In this case, although the CMIA gives the plaintiff "patient" the right to recover damages, attorney's fees, and "the costs of litigation" if the patient sustains loss or injury as a result of a violation of the CMIA (Civ. Code, § 56.35), "the statute makes no mention of prevailing" defendants (*Murillo*, *supra*, 17 Cal.4th at p. 991). "In other words, [Civil Code section 56.35 of the CMIA] does not *expressly* disallow recovery of costs by prevailing [defendants]; any suggestion that prevailing [defendants] are prohibited from recovering their costs is at most *implied*. Accordingly, based on the plain meaning of the words of the statutes in question, we conclude Civil Code section [56.35] [of the CMIA] does not provide an 'express' exception to the general rule permitting a [defendant], as a prevailing party, to recover its costs under section 1032(b)." (*Id.* at p. 991.)

We are not persuaded by plaintiff's contention that policy considerations require a different result in this case. Plaintiff argues that her claim under the CMIA was not frivolous, groundless, or unreasonable; that she is "impoverished"; that the CMIA is a

9

"remedial statute"; and that "courts, in exercising their discretion, should demonstrate[] sensitivity to the imbalance inherent in allowing equal cost-shifting between unequal parties . . . ."

We are not insensitive to plaintiff's economic condition and we acknowledge her policy concerns. However, the cases cited by plaintiff in a footnote in support of her policy argument arise under the Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.) and/or section 998, not the CMIA. FEHA and section 998 contain materially different cost-shifting provisions. (See, e.g., Gov. Code, § 12965, subd. (c)(6) [under FEHA, "the court, *in its discretion*, may award to the prevailing party . . . reasonable attorney's fees and costs, . . . *except that*, notwithstanding Section 998 of the Code of Civil Procedure, *a prevailing defendant shall not be awarded fees and costs unless* the court finds the action was frivolous, unreasonable, or groundless when brought . . ." (italics added)]; *Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97, 105 [costs provision under FEHA, Gov. Code § 12965, former subd. (b), "is an express exception" to § 1032(b)]; see also *Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 129 (*Nelson*) [although trial court has discretion under § 998 to consider a party's ability to pay costs, no such authority exists under §§ 1032 and 1033.5]; accord, *LAOSD Asbestos Cases* (2018) 25 Cal.App.5th 1116, 1123–1125.)

Further, "[a]doption of [plaintiff's] position" that public policy considerations should displace the express language of section 1032(b) and Civil Code section 56.35 "is foreclosed by the Supreme Court's holding in *Murillo* . . . ." (*Bates v. Presbyterian Intercommunity Hospital, Inc.* (2012) 204 Cal.App.4th 210, 218; see *id.* at p. 219 [holding that a defendant prevailing under the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.) may recover costs under § 1032, even though Welf. & Inst. Code, § 15657 only provides for attorney's fees and costs to a prevailing plaintiff].) The California Supreme Court in *Murillo*, in the context of the Song-Beverly Act, rejected a policy argument analogous to that raised by plaintiff in the

instant case.  As explained by the California Supreme Court in *Murillo*, the plaintiff, in "[t]urning from the actual words of the pertinent statutes, . . . argue[d] that public policy would be furthered by a holding that Civil Code section 1794(d) [of the Song-Beverly Act] is an exclusive, one-way cost-shifting provision that necessarily prohibits prevailing [defendant] sellers from recovering any costs under the Song-Beverly Act.  [The plaintiff] argue[d] such an interpretation is consistent with the pro-consumer purpose of the law, and a contrary decision would undermine the Legislature's intent by deterring consumers from enforcing their rights under the [Song-Beverly] Act by making it too expensive to do so." (*Murillo*, *supra*, 17 Cal.4th at p. 993.)

In rejecting this policy argument, the California Supreme Court explained, "We could not, of course, ignore the actual words of the statute in an attempt to vindicate our perception of the Legislature's purpose in enacting the law.  ' "This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed." ' [Citations.]" (*Murillo*, *supra*, 17 Cal.4th at p. 993.)  The California Supreme Court stated that its statutory interpretation "follow[ed] precisely the words of section 1032(b) [in the general costs statute] and Civil Code section 1794(d) [of the Song-Beverly Act]." (*Ibid*.)

The California Supreme Court also determined that its "interpretation of these statutes retain[ed] the primary financial benefit the Song-Beverly Act offers to consumers who sue thereunder to enforce their rights," specifically attorney's fees. (*Murillo*, *supra*, 17 Cal.4th at p. 994.)  The California Supreme Court explained, "By permitting prevailing [plaintiff] buyers to recover their attorney fees in addition to costs and expenses, our Legislature has provided injured consumers strong encouragement to seek legal redress in a situation in which a lawsuit might not otherwise have been economically feasible.  We cannot say this aspect of the statutory scheme, which favors [plaintiff] buyers exclusively, is insufficient to vindicate the Legislature's purpose in enacting the Song-Beverly Act, or that allowing a [defendant] seller to recover costs

11

when it prevails would undermine the Legislature's purpose. To the extent buyer contends the playing field should be tilted even more in favor of consumers, that argument is more properly addressed to the Legislature." (*Ibid*.)

In this case, Civil Code section 56.35 of the CMIA similarly provides for attorney's fees for only the prevailing plaintiff, although the amount is limited to $1,000 per plaintiff patient. However, plaintiff in this case also sought nominal damages under Civil Code section 56.36 of the CMIA. Civil Code section 56.36 generally provides that "an individual may bring an action against a person or entity who has negligently released confidential information or records concerning him or her in violation of this part, for either or both of the following: [¶] (1) . . . [N]ominal damages of one thousand dollars ($1,000). . . . [¶] (2) The amount of actual damages, if any, sustained by the patient." (*Id.*, subd. (b)(1), (2).) To recover nominal damages under Civil Code section 56.36, "it is not necessary that the plaintiff suffered or was threatened with actual damages." (*Id.*, subd. (b)(1).) As one appellate court has observed regarding the nominal damages provision in the CMIA, "[p]rovisions such as this . . . generally serve as penalties to discourage noncompliance, and as liquidated damages that facilitate and encourage private enforcement of the statute by eliminating the difficult and sometimes expensive task of proving actual damages (such as emotional distress) caused by violation of the act's privacy provisions." (*Brown v. Mortensen* (2019) 30 Cal.App.5th 931, 941.)

Considering the CMIA's provisions allowing a prevailing plaintiff to recover $1,000 in nominal damages either *without* actual damages or *in addition* to actual damages (Civ. Code, § 56.36, subd. (b)(1), (2)), plus up to $1,000 in attorney's fees for certain violations (*id.*, § 56.35), consistent with *Murillo*, "[w]e cannot say this aspect of the statutory scheme, which favors [plaintiffs] exclusively, is insufficient to vindicate the Legislature's purpose in enacting the [CMIA], or that allowing a [defendant] to recover costs when it prevails would undermine the Legislature's purpose. To the extent

[plaintiff] contends the playing field should be tilted even more in favor of [plaintiff patients], that argument is more properly addressed to the Legislature." (*Murillo*, *supra*, 17 Cal.4th at p. 994.)

In sum, we determine that defendants were entitled to recover costs as the prevailing parties under section 1032(b) and that their right to recover costs was not precluded by Civil Code section 56.35 of the CMIA.

### C. *Amount of Costs*

Plaintiff contends that the trial court erred in awarding costs to defendants for certain items. Before considering the substance of plaintiff's arguments as to each item, we first set forth the general rules regarding allowable items of costs and the standard of review.

### 1. General legal principles regarding costs

As we have explained, section 1032 provides that the prevailing party is entitled to recover litigation costs. (*Id.*, subd. (b).) "Section 1033.5 sets forth the types of expenses that are and are not allowable as costs under section 1032. Specifically, subdivision (a) of section 1033.5 describes items that are 'allowable as costs,' subdivision (b) describes items 'not allowable as costs, except when expressly authorized by law,' and . . . [subdivision ](c)(4) provides that '[i]tems not mentioned in this section and items assessed upon application may be allowed or denied in the court's discretion.' " (*Segal*, *supra*, 12 Cal.5th at p. 658.)

Regarding the trial court's discretion to award costs for items not mentioned in section 1033.5, it has been explained that " 'if an expense is neither expressly allowable under subdivision (a) nor expressly prohibited under subdivision (b), it may nevertheless be recovered' " in the court's discretion under subdivision (c). (*Segal*, *supra*, 12 Cal.5th at p. 665.) In other words, " '[t]he statutory scheme clearly establishes two mutually exclusive sets of trial preparation expenses—one set which is allowable as a matter of right (§[§] 1033.5, subd. (a) . . . ) and one which is not (§[§] 1033.5, subd. (b) . . . ).

13

Expenses which do not fit into either of these two categories fall into a special statutory safety net: they may be recovered but only at the discretion of the court (§ 1033.5, subd. (c)).' [Citations.]" (*Ibid*.)

"All costs, whether expressly permitted under section 1033.5, subdivision (a) or awarded in the trial court's discretion pursuant to section 1033.5[, subdivision] (c)(4), must be 'reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation' (§ 1033.5, subd. (c)(2)) and 'reasonable in amount' (§ 1033.5, subd. (c)(3))." (*Segal*, *supra*, 12 Cal.5th at p. 658.)

The party seeking costs must serve and file a memorandum of costs. (Rule 3.1700(a)(1).) "The memorandum of costs must be verified by a statement of the party, attorney, or agent that to the best of his or her knowledge the items of cost are correct and were necessarily incurred in the case." (*Ibid*.) "Initial verification will suffice to establish the reasonable necessity of the costs claimed. There is no requirement that copies of bills, invoices, statements, or any other such documents be attached to the memorandum." (*Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, 1267 (*Jones*).)

" 'If items on a memorandum of costs appear to be proper charges on their face, those items are prima facie evidence that the costs, expenses, and services are proper and necessarily incurred. [Citations.] The burden then shifts to the objecting party to show them to be unnecessary or unreasonable.' [Citation.] '[M]ere statements' in a motion to strike and attorney declaration 'are insufficient to rebut the prima facie showing.' [Citation.]" (*Rojas v. HSBC Card Services Inc*. (2023) 93 Cal.App.5th 860, 896 (*Rojas*).) " 'On the other hand, if items are properly objected to, they are put in issue and the burden of proof is on the party claiming them as costs.' [Citation.]" (*Jones*, *supra*, 63 Cal.App.4th at p. 1266.) "Only if the costs have been put in issue via a motion to tax costs must supporting documentation be submitted." (*Id.* at p. 1267.) "Whether an item listed on the memorandum was reasonably necessary is a question of fact to be decided

14

by the trial court.  [Citation.]"  (*Adams v. Ford Motor Co.*  (2011) 199 Cal.App.4th 1475, 1487.)

## 2.  Standard of review

"Generally, a trial court's award of costs is reviewed for abuse of discretion." (*Segal*, *supra*, 12 Cal.5th at p. 658.)  "Under this standard, we consider the court's legal conclusions de novo, and assess its factual findings for substantial evidence.  [Citation.] We will not reverse the court's application of the law to the facts unless it is 'arbitrary and capricious.'  [Citation.]"  (*In re Butler* (2018) 4 Cal.5th 728, 738–739.)

On appeal, " ' "[a]ll intendments and presumptions are indulged to support [the trial court's order] on matters as to which the record is silent, and error must be affirmatively shown." ' [Citation.]"  (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140.) "As a general rule, we presume that the trial court has properly followed established law" (*People v. Diaz* (1992) 3 Cal.4th 495, 567), including that the court "considered all relevant matters" such as the necessity and reasonableness of a claimed cost (*Rojas*, *supra*, 93 Cal.App.5th at p. 901).

## 3.  Analysis

### a.  *Taking, transcribing, videotaping, and traveling to plaintiff's deposition*

In their memorandum of costs, defendants sought costs related to the deposition of plaintiff.  Defendants' claimed costs consisted of $419.20 for "[t]aking" plaintiff's deposition, $3,145.40 for "[t]ranscribing" the deposition, $1,222.50 for videotaping the deposition, and $142.89 for mileage and parking.  Accompanying defendants' memorandum of costs was an invoice from the court reporting service that took, transcribed, and videotaped the deposition.  The invoice indicated that defendants' claimed "[t]aking" cost was for the rental of a conference room for the deposition.

15

Defendants' claimed "[t]ranscribing" cost was for nine fees charged by the court reporting service, including a fee for an original transcript and one copy.[6]

In her motion to tax (and here on appeal), regarding the fee for taking her deposition, plaintiff contended that defendants' supporting invoice for the deposition did not show a fee expressly labelled as a $419.20 "[t]aking" fee; section 1033.5, subdivision (a)(3) only allows an original and one copy of the transcript; the fee was duplicative of other costs requested; and the fee was excessive and not reasonable in amount under section 1033.5, subdivision (c)(3). Similarly, regarding the $3,145.40 transcribing fee, plaintiff contended that the amount should be reduced to $1,486.10, which the invoice reflected was the charge for an original and one copy of the transcript; the fee was duplicative of other fees charged; and the fee included an "excessive" charge for an expedited request that was not necessary. Regarding the videotaping fee, plaintiff contended that it was unnecessary to videotape her deposition since she was a party who would be appearing at trial, no portion of the videotape was filed with the court, and it was duplicative because one of the defense attorneys appeared by "Zoom videoconference" for free. Regarding mileage and parking costs, plaintiff contended that local travel expenses are not recoverable costs under section 1033.5, subdivision (a)(3) and defense counsel's San Francisco office was less than 75 miles from the location of plaintiff's deposition in Santa Cruz.

Defendants in opposition contended that their requested costs were sufficiently documented, allowable, necessary, and reasonable in amount.

---

[6] Specifically, the transcribing cost of $3,145.40 claimed by defendants encompassed nine fees on the court reporting service's invoice for the "Original Transcript of Jane Doe," which included $1,486.10 for "Original & One – Electronic (193 Pages)," $500 for an "Appearance Fee (Full Day)," $400 for a "Court Reporter's Bonus - At Cost," $71.25 for "Waiting Time (0.75 hours)," $384.80 for "Exhibit(s) - Electronic (592 Pages)," $50 for "Processing & Handling," $35 for "Original Held By Code," $45 for "Litigation Package," and $173.25 for "Video Surcharge (165 pages)."

Section 1033.5, subdivision (a) expressly provides that allowable costs include (1) "[t]aking, video recording, and transcribing necessary depositions, including an original and one copy of those taken by the claimant," and (2) "[t]ravel expenses to attend depositions." (*Id.*, subd. (a)(3)(A), (C).) Further, " 'if an expense is neither expressly allowable under subdivision (a) [of section 1033.5] nor expressly prohibited under subdivision (b), it may nevertheless be recovered' " in the court's discretion under subdivision (c). (*Segal*, *supra*, 12 Cal.5th at p. 665.)

In this case, plaintiff does not dispute that her deposition by defendants was "necessary." (§ 1033.5, subd. (a)(3)(A).) Regarding "[t]aking" and "transcribing" the deposition, which are costs expressly allowed under section 1033.5, subdivision (a)(3)(A), defendants provided an invoice from the court reporting service that handled the deposition. The invoice listed the fees that were encompassed within these two claimed costs. It was not unreasonable for the trial court to determine, based on the fact that the invoice was from a third party that provided the court reporter for the deposition and that prepared the deposition transcript, that (1) the included fees were necessary for the taking and transcribing of the deposition even though no single fee on the invoice was explicitly labeled as a taking fee or a transcribing fee and that (2) the amounts on the invoice were reasonable. (See *Jones*, *supra*, 63 Cal.App.4th at pp. 1267–1268.) Plaintiff presented no evidence to the contrary regarding a lack of necessity or regarding unreasonableness. For example, plaintiff offered no evidence that the defendants could have had plaintiff's deposition taken and transcribed by the court reporting service without paying one or more of the fees listed in the invoice, or that the amounts charged by the court reporting service were unreasonable. It was also not improper for the trial court to conclude that a seven-day expedited service for preparation and delivery of the deposition transcript was necessary and reasonable where, according to defense counsel's declaration:  (1) plaintiff delayed six months before attending her deposition on April 19, 2023; (2) the deposition transcript was needed for preparation of

17

the dispositive summary judgment motion which was filed less than a month later on May 12, 2023; and (3) by prevailing on a summary judgment motion defendants could (and did) avoid having to respond to an anticipated motion for class certification by plaintiff.

Regarding the videotaping of the deposition, plaintiff does not provide any authority for the proposition that it is unnecessary to videotape the deposition of the named plaintiff. (See, e.g., *Seever v. Copley Press, Inc.* (2006) 141 Cal.App.4th 1550, 1557 [costs for videotaped deposition of plaintiff were properly awarded], disapproved on another ground in *Segal*, *supra*, 12 Cal.5th at p. 668, fn. 5.) We are also not persuaded by plaintiff's argument that videotaping was unnecessary because no portion of the videotape was filed with the trial court. This case did not proceed to trial, where the videotaped deposition could have been used at or in preparation for trial, because defendants prevailed on summary judgment. (See *Seever*, *supra*, at p. 1557 [although not used at trial, videotaped deposition was necessary to prepare strategy for cross-examination of important witness at trial].) Lastly, plaintiff fails to establish that a "Zoom videoconference" eliminated the need for defendants to contract with the court reporting service to provide a videographer. For example, plaintiff does not explain or provide legal authority establishing that a recorded Zoom videoconference may be admitted at trial to the same extent as a videotaped deposition provided by the court reporting service.

Regarding defendants' claimed costs for mileage and parking related to plaintiff's deposition, plaintiff contends that these costs are not recoverable when incurred by local defense counsel, primarily relying on *Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761 (*Ladas*) and *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44 (*Gorman*). However, neither case supports plaintiff's argument.

In *Ladas,* the appellate court determined that "*lunches* consumed while attending local depositions" were "not recoverable as costs." (*Ladas*, *supra*, 19 Cal.App.4th at

18

p. 774, italics added & omitted; see *Doe v. L.A. County Dep't of Children & Family Servs.* (2019) 37 Cal.App.5th 675, 695 (*Doe*) ["*Ladas* . . . involved seeking reimbursement for meal expenses while attending local depositions"]; *Howard v. American National Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 541 (*Howard*) [referring to *Ladas* as "a case disallowing meal expenses incurred by local attorneys taking local depositions"].)

Further, in *Ladas*, "[a]nother item disputed . . . was . . . for '[*l*]ocal [*t*]ravel [*e*]xpenses' *unrelated to depositions*. These items included parking fees, cab fares and 'mileage/parking' fees for attorneys and paralegals during 1989-1992." (*Ladas*, *supra*, 19 Cal.App.4th at p. 775, italics added.) The appellate court in *Ladas* explained that "[t]he only travel expenses authorized by section 1033.5 are those to attend depositions. [Citation.] Routine expenses for local travel by attorneys or other firm employees are not reasonably necessary to the conduct of litigation. The declaration of [defense counsel] failed to demonstrate how any of these charges were necessary to conduct the litigation, as opposed to being merely convenient. The expenses should not have been allowed." (*Id.* at pp. 775–776.) Considering this quote in context, we believe the appellate court's statement that "[r]outine expenses for local travel by attorneys or other firm employees are not reasonably necessary to the conduct of litigation" (*id.* at pp. 775–776) was in reference to the "disputed" amounts for " '[l]ocal [t]ravel [e]xpenses' *unrelated to depositions*" (*id.* at p. 775, italics added).

Consistent with this interpretation of *Ladas*, this court in *Gorman* explained, "Section 1033.5, subdivision (a)(3) clearly contemplates recovery of travel costs incurred by counsel to attend depositions. [Citation.] By negative implication, this statute *does not provide for recovery of local travel expenses* by attorneys and other firm employees *unrelated to attending depositions* (*Ladas v. California State Auto. Assn.*, *supra*, 19 Cal.App.4th at pp. 775–776 . . .) nor does it allow recovery for 'meals eaten while attending local depositions.' [Citation.]" (*Gorman*, *supra*, 178 Cal.App.4th at p. 72,

19

italics added; see *id.* at p. 73 [referring to "unrecoverable costs, such as meals and travel unrelated to attending depositions"].)  In sum, plaintiff fails to provide legal authority establishing that defendants were not entitled to costs for local mileage and parking *related* to plaintiff's deposition.

Plaintiff also contends that the travel expenses of local defense counsel to attend plaintiff's deposition in person was "unnecessary" because local defense counsel "could have attended remotely, like [another defense counsel]" attended remotely.  Plaintiff cites no legal authority in support of this argument.  We are not persuaded by plaintiff's contention that it is "unnecessary" for defense counsel to appear in person at the named plaintiff's deposition.  The trial court could reasonably conclude that it was necessary for at least one defense counsel to attend in person, whether (1) because one of plaintiff's counsel also appeared at the deposition in person, (2) to avoid the risk of technological difficulties that might occur with a remote appearance by "Zoom videoconference," (3) to facilitate the ability to question plaintiff about deposition exhibits, and/or (4) to more effectively assess plaintiff's demeanor for purposes of trial.

In sum, plaintiff fails to demonstrate that the trial court abused its discretion in awarding costs related to plaintiff's deposition.

#### b.  *Travel expenses for five depositions taken by plaintiff*

In their memorandum of costs, defendants sought $3,846.90 for travel expenses incurred by defense counsel in connection with five depositions that were taken by plaintiff.  Supporting bills and other documents reflected that defense counsel incurred: (1) $252.96 for roundtrip airfare between Portland, Oregon and San Jose, California, departing on July 11, 2023, and returning on July 22, 2023; (2) $663.44 for a rental car; and (3) $2,951.79 for a Scotts Valley hotel, of which (4) $141.29 was for food and beverage charges at the hotel.[7]

_____

[7] These amounts total $3,868.10, but defendants claimed only $3,846.90. (continued)

The five deponents all worked for defendant Alliance in Santa Cruz. The depositions were conducted remotely by videoconference by plaintiff's counsel, while each deponent and defense counsel were apparently present at the San Francisco office of defense counsel's law firm. Of the five depositions, three were conducted on July 13 (full day), July 14 (full day), and July 18, 2023 (morning through early afternoon), and two depositions were conducted on July 21, 2023 (approximately one hour each, between morning and early afternoon). Defense counsel asked no questions at the deposition.

In a declaration, defense counsel stated that she was "based in the State of Washington" and that she had "been the primary defense counsel and primary contact for [d]efendant [Alliance] . . . in this action from the outset." She explained that the five depositions were scheduled to take place over a two-week period. Defense counsel stated that she traveled to Santa Cruz on July 11, 2023, prior to the first deposition on July 13, for "necessary witness preparation and defense," and that she departed on July 22, 2023, after the last deposition on July 21. Defense counsel stated that she "prepare[d] the witnesses and defended the depositions with . . . [defendant Alliance's] employees in person to ensure the necessary and effective defense to the litigation." Defense counsel signed her declaration on October 24, 2023 in Long Beach, Washington.

In her motion to tax (and here on appeal), plaintiff contended that defendants could not recover the travel expenses as costs under section 1033.5. First, she argued that the captions of various documents filed by defendants in this action indicated that defense counsel's business address was the San Francisco office of defense counsel's law firm. Thus, according to plaintiff, defense counsel had only engaged in "local" travel for the depositions, and defendant was not entitled to recover any local travel expenses under *Ladas*, *Gorman*, *Doe*, and *Howard*. Plaintiff also contended that "IRS Regulations"

---

Defendants also provided a document that reflects that a premium of $120 was paid for a "Collision Damage Plan" for defense counsel effective July 10 to 22, 2023. It is not clear whether defendants also sought to recover this premium payment as costs.

supported her argument that local travel expenses are not allowable or recoverable under section 1033.5 and *Ladas.* Plaintiff further argued that defense counsel never previously identified herself as having a residence in Washington State, that her declaration did not establish her residency in Washington State during the relevant time period of July 11 through 21, 2023, and that the defense counsel's declaration did not explain why she flew roundtrip from Portland, Oregon. Second, plaintiff argued that the travel expenses were unnecessary and not reasonable in amount because: (a) defense counsel could have appeared by Zoom videoconference for free without traveling; (b) defense counsel did not ask any questions at the depositions and could have had cocounsel, who was local and from the same law firm, attend the depositions instead; (c) the five depositions were completed on four days without the need for an overnight stay at a hotel; and (d) the deposition transcripts indicate that defense counsel appeared from her law firm's San Francisco office which only required a "local commute" to appear in person in Santa Cruz.[8]

Defendants in opposition contended that their requested travel expenses were allowable, necessary, and reasonable in amount.

Section 1033.5, subdivision (a) provides that allowable costs include "[t]ravel expenses to attend depositions." (*Id.*, subd. (a)(3)(C).) Travel expenses incurred by out-of-county counsel are recoverable. (*Thon v. Thompson* (1994) 29 Cal.App.4th 1546, 1548 ["trial court did not err in awarding costs incurred by Bakersfield attorneys to attend depositions in San Diego County"].) Travel expenses may include airplane tickets, hotel, car rental, gas, and parking. (*Chaaban v. Wet Seal, Inc.* (2012) 203 Cal.App.4th 49, 59–60.) Further, meal expenses may be recovered for attending "out-of-town depositions."

---

[8] On appeal, plaintiff also contends that she originally requested that the five depositions be scheduled on four consecutive days, but defense counsel refused and offered deposition dates solely convenient to defense counsel's schedule. However, plaintiff does not provide a record cite showing evidence supporting this contention.

(*Doe, supra*, 37 Cal.App.5th at p. 695 [no abuse of discretion in awarding meal expenses where counsel's office was approximately 90 miles away].)

In this case, the trial court did not abuse its discretion in implicitly determining that it was "reasonably necessary" (§ 1033.5, subd. (c)(2)) for defendants to send their primary defense counsel, rather than another counsel from the same law firm, to prepare the witnesses for deposition and to attend the deposition in person. Defense counsel stated in a declaration that she had "been the primary defense counsel and primary contact" for defendant "from the outset" of the case. (See *Doe, supra*, 37 Cal.App.5th at p. 696 [no abuse of discretion in awarding costs for travel expenses of nonlocal paralegal who had been "involved in the case from the outset"].) Further, these depositions of defendant's employees appeared to be important as plaintiff herself repeatedly sought to continue the hearing on defendants' motion for summary judgment in order to take these depositions and to obtain certified copies of the transcripts. Under these circumstances, it was within the court's discretion to determine that primary defense counsel's in-person presence to prepare the deponents and to attend their depositions was reasonably necessary. (§ 1033.5, subd. (c)(2).) The fact that defense counsel did not ask questions of the deponents, who were employees of defendant, does not convince us otherwise.

However, defense counsel's declaration that she was "based in the State of Washington" did not establish that the entirety of her travel expenses were necessary and reasonable. The record reflects that defense counsel consistently identified her law firm's San Francisco office as her business address. In this court, defendants contend that defense counsel's business address "is and has been" the Seattle office of defense counsel's law firm. However, defendants provide no record cite showing that evidence was presented in the trial court to support the contention that defense counsel's business address was the Seattle office during the relevant timeframe in July 2023 when the depositions occurred. In the absence of evidence that defense counsel's business office was the Seattle office, defendants fail to establish that counsel's airfare to and from

23

Washington State, or to and from Portland, Oregon, was necessary and reasonable.  (See § 1033.5, subd. (c)(2), (3).)

Regarding the rental car charge of $663.44 for 11 days, assuming without deciding that it was reasonable to rent a car to travel from San Francisco to Santa Cruz to prepare witnesses, it is not clear to what extent the rental car was used for traveling for this purpose and to what extent it was used by the Washington-based attorney for traveling from the Scotts Valley hotel to the deposition at her law firm's San Francisco office. Any travel to or from a deposition taking place at the San Francisco office would not be recoverable because defendants failed to show that their primary counsel's office was somewhere other than the San Francisco office.  As the record does not reflect how the amount should be apportioned between allowable and unallowable travel, and as defendants were not entitled to the entire amount without apportionment, defendants should not have been awarded the entirety of the rental car charge.

Similarly, assuming without deciding that meal expenses may be recovered for an attorney with a San Francisco business office who travels to Santa Cruz to prepare witnesses for depositions, it is not clear which food and beverage charges in this case were solely related to defense counsel's witness preparation in Santa Cruz.  Therefore, costs should not have been awarded for food and beverage charges.

In sum, we determine that defendants should not have been awarded $3,846.90 for travel expenses incurred by their primary defense counsel for the five depositions in San Francisco.

### c.  *Transcripts for depositions taken by plaintiff*

In their memorandum of costs, defendants also sought a total of $4,338.05 for transcribing the five depositions taken by plaintiff of defendant Alliance's employees. Supporting invoices reflected that the depositions were taken on July 13, 14, 18, and two on July 21, 2023, with transcription fees of $1,286.80, $961.65, $937.90, $608.70, and

24

$543.  The invoices themselves are dated July 31, August 4, 21 (2 invoices), and 22, 2023.

In her motion to tax (and here on appeal), plaintiff contended that the fees incurred by defendants for transcribing the depositions were not necessary or reasonable in amount.  Plaintiff acknowledged that she had noticed and taken the depositions.  She also acknowledged that she had repeatedly sought to continue the hearing on defendants' summary judgment motion so that she could file certified copies of the deposition transcripts in opposition to the summary judgment motion.  Plaintiff contended, however, that the transcription fees incurred by defendants were nevertheless "entirely avoidable" because defendants refused to agree to a continuance of the summary judgment hearing, the trial court repeatedly denied plaintiff's continuance requests, and the court ultimately granted defendants' summary judgment motion before plaintiff could file any certified deposition transcripts.  Plaintiff also argued that the transcript costs were unreasonable because defendants had obtained multiple copies when they were only entitled to one copy of each transcript.

In opposition, defendants contended that section 1033.5 did not limit a prevailing party's right to recover transcription costs to only those cases where the losing party had used the transcripts.  Defendants also argued that their supporting invoices showed that they were only charged for one transcript for each deposition.

Section 1033.5 expressly provides that allowable costs include "transcribing necessary depositions, including . . . one copy of depositions taken by the party against whom costs are allowed."  (*Id.*, subd. (a)(3)(A).)  Such costs are allowable when "reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation."  (*Id.*, subd. (c)(2).)  The need for an item is determined at the time the cost is incurred.  (*Nelson*, *supra*, 72 Cal.App.4th at p. 132; *Naser v. Lakeridge Athletic Club* (2014) 227 Cal.App.4th 571, 576 (*Naser*).)

25

In this case, the trial court did not abuse its discretion in determining that the transcripts for the depositions of the five employees of defendant Alliance were "reasonably necessary to the conduct of the litigation." (§ 1033.5, subd. (c)(2).) Plaintiff repeatedly sought to continue the hearing on defendants' motion for summary judgment so that she could take these depositions and so that she could obtain certified copies of the deposition transcripts to file with the court. It was therefore reasonably necessary for defendants to seek their own copies of the deposition transcripts so that they could respond to any contentions raised by plaintiff about the content of those depositions. The fact that plaintiff was later unsuccessful in continuing the summary judgment hearing, or that she ultimately failed to obtain and file copies of the transcripts with the court in opposition to the summary judgment motion, does not establish that it was unnecessary or unreasonable for defendants to seek and obtain their own copies. In this regard, we observe the depositions were concluded by July 21, 2023, which is prior to the trial court filing its August 7, 2023 order denying defendants' motion for summary judgment. Thus, at the time the depositions were concluded, defendants would not have known whether they would ultimately prevail on summary judgment and whether the deposition transcripts were no longer needed. Further, although it is not clear from the record whether defendants requested a transcript from the court reporter immediately after the conclusion of each deposition in July 2023, or at some later point in time, we observe that the invoices for the transcripts are dated between July 31 and August 22, 2023, which is prior to a judgment being filed in defendants' favor on September 1, 2023. We believe it was well within the court's discretion to conclude that it was reasonably necessary for defendants to obtain the transcripts prior to judgment being entered in their favor.

Lastly, although each invoice lists a charge for "[t]ranscripts" (plural), each invoice reflects a "[q]uantity" of only "1." From this evidence, it was reasonable for the trial court to conclude that defendants only sought to recover the cost of one transcript for each of the five depositions.

26

#### d. *Messenger fees for courtesy copies*

In their memorandum of costs, defendants sought $155.45 for a messenger service in connection with a motion for leave to file documents under seal. An accompanying invoice indicates that "[c]ourtesy copies" were delivered by the messenger service on August 23, 2021. According to a declaration from defense counsel, the messenger fee "concern[ed] the delivery of sealed documents to the [trial court] for lodging." Defendants sought to seal the documents "containing [p]laintiff's true name, which [p]laintiff requested not be disclosed."

In her motion to tax (and here on appeal), plaintiff contended that the messenger fee for courtesy copies was not allowable under section 1033.5, subdivision (a). She also argued that the courtesy copies were not reasonably necessary under section 1033.5, subdivision (c)(2), because the courtesy copies were not ordered by the trial court, were not required to be hand delivered under local court rules, and were duplicative of other filing and service fees. Plaintiff also contended that "lodged seal documents are routinely filed electronically with the [trial court], as [p]laintiff ha[d] done" in the past.

In opposition to the motion to tax, defendants contended that although the messenger costs were not expressly allowed under section 1033.5, the trial court had the discretion to award them. Defendants also argued that the documents were lodged pursuant to rule 2.551(b)(4) and (d) and that the absence of a requirement that they be hand delivered was "immaterial." Defendants further contended that the "messenger delivery for lodging documents is not duplicative of other costs" and that the amount was reasonable.

Rule 2.551(d) sets forth the procedure for lodging records with the trial court when a party files a motion to seal. Rule 2.551(d) allows a party that is lodging records to transmit the records "in paper form" or by "electronic" means. (Rule 2.551(d)(1), (3).) "Messenger fees are not expressly authorized by statute, but may be allowed in the discretion of the court. [Citations.]" (*Nelson*, *supra*, 72 Cal.App.4th at p. 132; see

27

§ 1033.5, subd. (c)(4).) The costs must be "reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation." (§ 1033.5, subd. (c)(2).)

We determine that the trial court did not abuse its discretion in concluding that the messenger fee was "reasonably necessary" in this case. (§ 1033.5, subd. (c)(2).) Defendants were required to file a motion to seal regarding records containing plaintiff's true name, and defendants were required to lodge the records while their motion to seal was pending. (Rule 2.551(b)(4), (d).) It was not an abuse of discretion for the trial court to determine that courtesy copies for the court itself were reasonably necessary. Further, since courtesy copies are usually hand delivered directly to department where the matter is assigned, defendants' reliance on the messenger service was reasonably necessary. In her motion to tax, plaintiff provided no evidence to support her contention that the messenger fee was duplicative of other filing and service fees. Plaintiff fails to establish that the trial court abused its discretion in awarding the messenger fees as costs.

### e. *"eCheck Fee"*

In their memorandum of costs, defendants sought $3,611.03 for filing and motion fees for 45 documents. Accompanying invoices from the electronic filing service provider reflected that a 25 cent "eCheck Fee" was added to the filing fee for some documents. On the invoices, the electronic filing service provider stated, "When it is most cost effective, [we] disburse[] fees on your behalf via eCheck. We pass these savings directly on to you."

In her motion to tax (and here on appeal), plaintiff contended that the 25 cent fee on six of the filings, for a total of $1.50, was not allowable under subdivision (a) and not reasonably necessary, as opposed to merely convenient or beneficial, under subdivision (c)(2) of section 1033.5. Plaintiff argued that the fee was not listed on the court's statewide civil fee schedule.

In opposition, defendants contended that the fee was imposed by the trial court. In support of this contention, defendants provided a declaration from counsel, who stated, "According to the [trial court's] authorized e-filing service provider, . . . eCheck fees are court-imposed fees associated with electronic filings. The only payment methods accepted by the Court other than electronic checks are in-person, mail-in, and credit card payment (with extra 2% charge), which are not reasonably practicable for [d]efendants."

Attached to defense counsel's declaration was an excerpt from the trial court's website. The court's website set forth the different methods by which court fees could be paid, including "In Person," "Online Traffic," "Online E-file," and "Mail-in Payments." Regarding "Online E-file," the website indicated that payment could be made by "[c]redit [c]ard and e-check payment." The court's website indicated that there was "an approximate 2% credit card fee charged for each credit card transaction," whether in person or online.

Also attached to defense counsel's declaration was an excerpt from the website of the electronic filing service provider. The electronic filing service provider's website described "[o]ther court-imposed fees," including credit card convenience fees and "eCheck" fees. The website stated that convenience fees were "charged by the court . . . when court fees are paid by credit card.*" Regarding "eCheck fees," the website stated, "If a court allows for court fees to be paid by electronic check, $0.25 is charged for the processing of that eCheck.*" These descriptions of credit card convenience fees and "eCheck fees" had an asterisk at the end of each description. Below these two descriptions was an asterisk with a note as follows, "*Note: [We] will pay court fees on your behalf via whichever method carries the lowest fee, usually eCheck."

In reply, plaintiff contended that the exhibit attached to defense counsel's declaration did not support the statement in counsel's declaration that "[a]ccording to the [trial court's] authorized e-filing service provider, . . . eCheck fees are court-imposed fees associated with electronic filings." Plaintiff also argued that defense counsel's statement

29

and the attached exhibit "lack[ed] foundation and [were] impermissible hearsay, because they [were] out of court statements asserted for the truth of the matter asserted." Plaintiff further contended that defense counsel had admitted in the declaration that the "eCheck Fees" were incurred because "eChecks" were more practicable than other payment methods, including free ones. Plaintiff contended that this showed that the "eCheck Fees" were merely convenient and therefore not recoverable as costs.

Section 1033.5 expressly allows the recovery of "[f]iling, motion, and jury fees" as costs. (*Id.*, subd. (a)(1).) Plaintiff does not dispute that the electronic filing of documents by defendants was "reasonably necessary" in this case. (*Id.*, subd. (c)(2).) Regarding defendants' filing of documents electronically, plaintiff fails to demonstrate that the "eCheck" fees were not also reasonably necessary. The trial court's website, an excerpt of which was attached to defense counsel's declaration, describes the methods by which filing fees may be paid. For online electronic filing, credit card or "e-check" are apparently the only means by which a payment may be made. Given that the court's website indicated that credit card payments incur "an approximate 2% . . . fee charged for each credit card transaction," the 25 cent "eCheck Fee" that defendants instead incurred from the electronic filing service provider avoided the court's two percent credit card transaction fee. Moreover, the 25 cent "eCheck Fee" was *cheaper* than the two percent fee that otherwise would have been charged by the court if a credit card had been used on each of the six transactions that plaintiff sought to tax. Plaintiff failed to provide evidence that online electronic filing could have been done without paying the 25 cent fee.

Further, regarding plaintiff's evidentiary objections to defendants' evidence, it is not clear whether plaintiff's objections were directed to the excerpt of the trial court's website that we have relied on. To the extent plaintiff's evidentiary objections were directed at the excerpt from the trial court's own website, we determine that the trial court did not err in implicitly overruling plaintiff's objections.

30

In sum, plaintiff fails to demonstrate that the trial court abused its discretion in awarding as costs the $1.50 that defendants incurred in "eCheck" fees.

### f. *Fees for notices of remote appearance*

In their memorandum of costs, defendants sought filing fees and fees by an electronic filing service provider for three notices of remote appearance. The total amount was $95.65.

In her motion to tax (and here on appeal), plaintiff contended that the fees were not categorically allowable under section 1033.5, subdivision (a), were not reasonably necessary under subdivision (c)(2), were not reasonable in amount under subdivision (c)(3), and were not allowable under subdivision (c)(4) because the trial court did not require the filing of such notices for hearings. She also argued that two of the notices were not categorically allowable "because the [trial court] heard and denied [d]efendants' request for payment of these costs, and/or the [c]ourt ordered [d]efendants[] to pay [p]laintiff's costs for having to bring such discovery motion."

In opposition, defendants contended that the notices of remote appearance were required by the Superior Court of Santa Cruz County, Local Rules, rule 1.4.01(a) and section 367.75, subdivision (a)(1). Further, defendants argued that plaintiff failed to provide legal authority demonstrating that costs were not recoverable due to the orders that were issued by the trial court after the parties appeared. According to a declaration from defense counsel, one of the notices pertained to an appearance for a hearing on defendant Hill's successful motion to compel discovery responses from plaintiff. A second notice pertained to an appearance for a hearing on an unsuccessful ex parte application by plaintiff. Defendants acknowledged that the third notice pertained to an appearance on a hearing for plaintiff's successful discovery motion for which defendants were also ordered to pay sanctions.

31

In reply, plaintiff contended that section 367.75 did not apply or otherwise require defendants to file notices of remote appearance because "all motion appearances in the [trial court] are conducted by each dep[artment] on Microsoft Teams."

Relevant here, Superior Court of Santa Cruz County, Local Rules, rule 1.4.01(a) states that "[r]emote appearances are governed by the California Code of Civil Procedure § 367.75 . . . ." In turn, section 367.75, subdivision (a)(1) generally provides that "in civil cases, when a party has provided notice to the court and all other parties that it intends to appear remotely, a party may appear remotely and the court may conduct conferences, hearings, and proceedings, in whole or in part, through the use of remote technology." In this case, defendants' notices appeared to comply with section 367.75, subdivision (a)'s requirement of notice before a party appears remotely.

Regarding plaintiff's contention that "all motion appearances in the [trial court] are conducted by each dep[artment] on Microsoft Teams," plaintiff on appeal fails to provide a record cite to evidence supporting this contention. Moreover, even if all motion hearings were conducted remotely by the trial court, plaintiff fails to establish that section 367.75's notice provision no longer applied because, for example, the trial court issued an order so stating. Plaintiff also fails to persuasively explain why defendants were not entitled to recover their costs for their notices of appearance as result of the trial court's orders on the underlying motions. Lastly, regarding plaintiff's argument that the claimed fees were not reasonable in amount, she fails to provide a record cite to evidence supporting this contention.

In sum, plaintiff fails to establish that the trial court abused its discretion in awarding costs for the notices of remote appearance.

### g. *Filing fee for a May 4, 2021 stipulation and protective order*

In their memorandum of costs, defendants included two separate entries for filing fees related to a May 4, 2021 stipulation and protective order. In the first entry regarding

this filing, defendants claimed $23.75 in costs. In the second entry, defendants claimed $7.20 in costs.

In her motion to tax (and here on appeal), plaintiff contended that the second entry was duplicative. According to plaintiff, the stipulation had been uploaded or electronically filed twice.

In opposition, defendants indicated in a footnote that they had withdrawn their request for costs in the second entry in the amount of $7.20.

As defendants have withdrawn the claimed cost of $7.20, we will reduce the cost award by that amount.[9]

### h. *Fees related to discovery motions in 2022 and 2023*

In their memorandum of costs, defendants sought motion fees, filing fees, and/or fees charged by an electronic filing service provider for documents filed in 2022 and 2023 in relation to (1) defendants' discovery motions against plaintiff and (2) plaintiff's discovery motion against defendants. The total amount sought by defendants for these items was $620.90.

In her motion to tax (and here on appeal), plaintiff contended that defendants were not entitled to recover these items as costs "because the [trial court] heard and denied [d]efendants' request for payment of these costs, and/or the [c]ourt ordered [d]efendants[] to pay [p]laintiff's costs for having to bring such discovery motion."

In opposition, defendants contended that plaintiff failed to provide legal authority establishing that the costs were not recoverable as a result of the trial court's rulings on the discovery motions. According to a declaration from defense counsel, some of the filings pertained to defendants' successful discovery motions against plaintiff.

---

[9] In their opposition to plaintiff's motion to strike or tax costs, defendants also stated that they were withdrawing "a portion of Cost Item No. 4 in Category 14 ($38) due to an unexpected issue with their exhibit compilation." Based on our review of the record, it appears that defendants only claimed $12 for "Cost Item No. 4 in Category 14." Further, plaintiff did not seek to tax this $12 amount.

33

Defendants acknowledged that plaintiff prevailed on her own discovery motion and was awarded sanctions against defendants.

On appeal, plaintiff fails to persuasively explain, with relevant record cites and supporting legal authority, why defendants were not entitled to recover their costs related to the discovery motions. Section 1033.5, subdivision (a) expressly allows the recovery of filing and motion fees as costs, without regard to which party ultimately prevailed on the motion. Although the costs must "be reasonably necessary to the conduct of the litigation" (*id*., subd. (c)(2)), plaintiff does not persuasively explain why the discovery related filings for which defendants sought costs were not reasonably necessary in this case. (See *Rozanova v. Uribe* (2021) 68 Cal.App.5th 392, 400 [although motions were denied, under the circumstances the motions could still be considered reasonably necessary to the litigation].) Indeed the record itself is inadequate to provide meaningful review because plaintiff did not include any of the motions or resulting orders in the record on appeal. (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 609 [" ' "if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed" ' "].)

In sum, plaintiff fails to establish that the trial court abused its discretion in awarding the filing and related fees as costs.

### i. *Fees for motions that were withdrawn or taken off calendar*

In their memorandum of costs, defendants sought motion fees, filing fees, and/or fees charged by an electronic filing service provider for documents filed in relation to discovery motions that defendants had filed in 2021 and 2022. The total amount sought by defendants for these items was $979.65.

In her motion to tax (and here on appeal), plaintiff contended that defendants were not entitled to recover these items as costs because the motions were "withdrawn or the hearing was taken off calendar."

34

In opposition, defendants contended that their discovery motions were necessitated by plaintiff's failure to timely comply with her discovery obligations. Defendants argued that although plaintiff ultimately agreed to supplement her discovery responses after the motions were filed, this did not render the filing and service of their motions unreasonable. Defendants provided a declaration of counsel setting forth this procedural history of the discovery motions and the timing of plaintiff's discovery responses.

We determine that the trial court did not abuse its discretion in awarding costs related to these discovery motions by defendants. The trial court could properly conclude that the motions were reasonably necessary (§ 1033.5, subd. (c)(2)) at the time they were filed. The fact that plaintiff apparently acknowledged the merit of the motions after they were filed, resulting in the motions being withdrawn or taken off calendar, does not change our conclusion. (See *Nelson*, *supra*, 72 Cal.App.4th at p. 132 [necessity of the cost is determined at the time the cost is incurred]; *Naser*, *supra*, 227 Cal.App.4th at p. 576.)

### j. *Fees charged by a third party for electronic service or filing*

In their memorandum of costs, defendants sought fees charged by electronic filing service providers for (1) the electronic filing of documents and/or (2) the electronic service of documents. Defendant claimed a total of $2,183.90 for these fees in connection with 56 documents that were filed and/or served electronically.

In her motion to tax (and here on appeal), plaintiff contended that the additional fee charged by some service providers for electronic filing was not reasonable in amount (§ 1033.5, subd. (c)(3)) and should have been reduced to $12, which was a "reasonable" fee charged by one of the other service providers that defendants used. Second, plaintiff contended that the fees for electronic service should not have been allowed because electronic service was not ordered by the trial court; electronic service is optional under the Superior Court of Santa Cruz County, Local Rules, rule 1.3.01(h); and service by e-mail is free. She argued that under these circumstances, the fees for electronic service

35

were not reasonably necessary (§ 1033.5, subd. (c)(2)) and should not have been awarded under section 1033.5, subdivision (c)(4).

In opposition, defendants contended that plaintiff failed to provide authority supporting her claim that an electronic filing fee should be the same ($12) regardless of the type and number of documents filed. Defendants also argued that the fact that different vendors charged different rates did not render defendants' electronic filing fees unreasonable. Defendants further contended that plaintiff failed to meet her burden of establishing the unreasonableness of each cost. Regarding electronic service fees, defendants argued that the trial court had the discretion to award such fees under section 1033.5, subdivision (c)(4).

We determine that the trial court did not abuse its discretion in awarding costs to defendants for fees for electronic filing through a third party. Section 1033.5 expressly allows for the recovery of costs for "[f]ees for the electronic filing or service of documents through an electronic filing service provider *if a court requires or orders* electronic filing or service of documents." (*Id.*, subd. (a)(14).) Plaintiff does not dispute that electronic filing was required by the trial court. We understand plaintiff to contend that the fees charged by third parties for electronic filing should have been reduced by the trial court to $12, which, according to plaintiff, was a "reasonable" electronic filing fee charged by one of the other service providers that defendants had used. However, plaintiff fails to persuasively articulate why any particular service fee for electronic filing in this case should have been reduced to $12. Plaintiff does not identify what fees were actually charged, with record citations, and she otherwise fails to demonstrate that the fees charged were unreasonable. (See *Rojas*, *supra*, 93 Cal.App.5th at pp. 896–897.)

We reach a different conclusion regarding the fees for electronic service, and we determine that such fees should not have been awarded as costs to defendants. Section 1033.5 expressly allows for the recovery of costs for "[f]ees for the electronic . . . service of documents through an electronic filing service provider *if a court requires or*

36

*orders* electronic . . . service of documents." (*Id.*, subd. (a)(14).)  In this case, defendants implicitly acknowledge that there was no requirement or order by the trial court for the parties to electronically serve documents.  Defendants argue that the trial court nevertheless had the discretion to award the fees as costs under section 1033.5, subdivision (c)(4).  However, such costs must still be "reasonably necessary." (*Id.*, subd. (c)(2).)  In this case, defendants did not offer any explanation, let alone provide evidence, that electronic service through a third party was "reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation." (*Ibid.*)

Defendants' reliance on *Harmon v. Pacific Tel. & Tel. Co.* (1962) 201 Cal.App.2d 453 does not dictate a different result.  Defendants cite *Harmon* for the proposition that the fact "that [an activity] could have been [done] . . . by some other process, at a lesser cost" does not justify the denial of costs.  (*Id.* at p. 455.)  In *Harmon*, a 1962 case, the appellate court explained that the "only requirements" for an award of costs at that time was "that the cost be actually incurred and that it be reasonable.  [Citation.]" (*Ibid.*)  In contrast, section 1033.5 currently requires that the cost be "reasonably necessary." (*Id.*, subd. (c)(2).)  In this case, defendants have not shown that it was reasonably necessary to use a third party to serve documents electronically.

Regarding the amount that must be taxed for the electronic service of documents, defendants' memorandum of costs did not separately list the individual charges for electronic service.  Instead, defendant's memorandum of costs included a category for "[f]ees for electronic filing or service of documents through an electronic filing service provider."  Within this category was a list of 56 documents.  For each document, defendants provided the total amount of fees for electronic service and/or electronic filing.  Defendants also provided supporting invoices that showed the amount of fees charged for electronic filing and/or electronic service.  Of the 56 documents, plaintiff identified the following document numbers as containing improper electronic service fees

37

and/or improper electronic filing fees:  1, 2, 5 through 16, 21, 24 through 30, 32, 33, 35 through 39, 46, 49, 50 through 52, and 54 through 56.  Based on our review of the invoices associated with these particular documents identified by plaintiff, some of the invoices do not contain fees for electronic service.  Of those documents identified by plaintiff that have invoices with electronic service fees, it appears the total amount of the electronic service fees is $230.  We will order the cost award reduced by this amount.

### III.    DISPOSITION

The order awarding costs is modified to reflect that the total amount of costs awarded is $14,981.22.  As so modified, the order is affirmed.  The parties shall bear their own costs on appeal.

_____
Greenwood, P. J.

WE CONCUR:


_____
Danner, J.


_____
Wilson, J.


Doe v. Santa Cruz-Monterey-Merced Managed Medical Commission et. al.
H051821